[No. 14601.   Department One.   April 26, 1918.]

# CHARLES BOOKHOUT, *Respondent,* v. GEORGE P. VUICH, *Appellant.*[1]

EVIDENCE — PAROL EVIDENCE — EXPLANATORY OF WRITING—UNCERTAINTY.   A written contract employing a farm laborer to work for a one-third share of the crops, increase of the live stock on the place, and profits from the chickens and eggs, the employer to furnish everything but labor, is so vague and uncertain as to admit of proof by parol explanatory of the writing that the employer agreed to furnish a certain amount of live stock, where it appears that there was no live stock or chickens on the place at the time the contract was made.

SAME—PAROL EVIDENCE TO VARY WRITING—REFORMATION.   Where a written contract is so vague and uncertain as to admit of proof of a contemporaneous oral agreement explanatory of the terms of the writing, it is not necessary to reform the writing in order to construe it accordingly.

MASTER AND SERVANT — CONTRACT OF EMPLOYMENT — BREACH — TERMINATION OF RELATION.   Where the employer of a farm laborer, to be paid by a one-third share of the crops, increase of live stock, and profits from the sale of chickens and eggs belonging to the employer, failed to furnish any live stock or chickens, the employee could rescind and recover for his services as though he had been actually dismissed from service.

SAME—CONTRACT OF EMPLOYMENT—CONSTRUCTION.   The relation of master and servant is created by a contract whereby plaintiff was employed to farm and live on defendant's premises, defendant agreeing to "pay" plaintiff one-third of the crops, increase of live stock, and profits from the sale of chickens and eggs and furnish everything except labor, the plaintiff agreeing to devote all his time to the work, and as much as possible to clearing, and to obey all orders of the defendant.

SAME—CONTRACT OF EMPLOYMENT—BREACH—MEASURE OF DAMAGES.   In such a case, on defendant's breach of the contract by failing to furnish live stock and chickens, and rescission by plaintiff, making proof of prospective earnings a matter of guesswork, plaintiff may recover the reasonable value of his services up to the time of the termination of the relation.

[1]Reported in 172 Pac. 740.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered June 2, 1917, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

*F. A. McMaster,* for appellant.

*Roche & Onstine,* for respondent.

PARKER, J.—The plaintiff, Bookhout, commenced this action in the superior court for Spokane county, seeking recovery of wages upon *quantum meruit* for labor performed by him for the defendant, Vuich, upon his farm in Spokane county. The plaintiff claims he is entitled to have the amount of his recovery so measured because of the breach of a contract of employment by which he was to work upon the defendant's farm and receive as compensation therefor shares in the crops and produce and in the increase of the live stock to result from his labor upon the farm, during the period from August, 1915, to November, 1916. Trial before the court sitting without a jury resulted in findings and judgment in favor of the plaintiff substantially as prayed for, from which the defendant has appealed to this court.

Appellant, the owner of the farm, is engaged in business and resides in the city of Spokane. The respondent is a farmer, fairly intelligent, and can speak and understand the English language, though he cannot read or write. In August, 1915, appellant employed respondent to work upon the farm, to assist in harvesting and caring for the crops produced thereon during that year. Soon thereafter they entered into an oral agreement by which it became understood between them that respondent would continue to work upon the farm for appellant until November, 1916, and receive as compensation therefor shares of the crops and

produce and of the increase of the live stock to be placed thereon by appellant. It was then understood between them that their contract should be reduced to writing; this was not done, however, until later, though respondent then went to work upon the farm and continued to work thereon until June 15, 1916, when he quit work, the cause of which we shall presently notice. After repeated efforts on the part of respondent to have the contract drawn up in writing, appellant caused it to be prepared and presented to respondent for signing in March, 1916. It was then read to respondent, and he apparently understood it as well as would ordinarily be expected of a person of his limited learning. To the end that the real relations of the parties may be understood, it seems necessary to here notice all the terms of the written contract; we therefore quote it in full as follows:

"This indenture made this 1st day of March, 1916, by and between George P. Vuich, party of the first part, (second) and Charles Bookhout, party of the second part (first).

"Whereas, the said party of the first part is the owner of the south half (S ½) of the southwest quarter (SW ¼) of section twenty-six (26), twp. twenty-three (23) range forty-five (45), Spokane county, Washington, and has employed the party of the second part to farm the said premises and to live thereon, occupy the same for a period beginning with the 19th day of August, 1915, to the 1st day of November, 1916, and in consideration of the party of the second part performing the work necessary on the said premises, to plow, till, sow, harvest and haul to market the crops to be raised thereon, and perform the work in connection therewith in a careful and husbandlike manner, it is agreed that the party of the first part will pay to the party of the second part for such labor and services, one-third (⅓) of all crops that are to be raised upon the said premises; that the party of the first part is

17—101 WASH.

to provide and furnish the necessary horses, tools, implements and machinery with which to do the work on the said farm, and it is further agreed that the party of the second part shall have one-third ($\frac{1}{3}$) of the increase of all live stock that may be on the said premises belonging to the party of the first part, and one-third ($\frac{1}{3}$) of the profits arising from the raising of chickens and the sale of eggs.

"It is further agreed that the seed necessary for the sowing for the year 1916 shall be furnished by the party of the first part without expense to the party of the second part, and that thereafter there shall be retained a sufficient amount of grain to feed all livestock upon the said premises and to provide a sufficient amount of seed for the following year.

"It is further agreed that the party of the second part is to devote all of his time upon the said premises, and that if it becomes necessary to employ additional help that such help shall be paid for out of the grain which is to be sold belonging to both parties, and after such expense has been deducted, then the balance shall be divided between the parties as above stated, and that the party of the second part agrees to haul all the grain to be sold to the Town of Rockford and deliver to the party of the first part, two-thirds ($\frac{2}{3}$) of the vegetables raised in Spokane and that the delivery of said grain and products shall be without expense to the party of the first part; it being fully agreed between the parties hereto that the party of the second part is to receive no compensation for his labor except as above stated.

"It is further agreed that the party of the second part will devote what time he can in cutting wood upon the said premises and is to have one-third ($\frac{1}{3}$) of all wood that is cut for his services, and also in consideration thereof, he is to perform what labor he can in the clearing of the said land in pulling stumps, the clearing of brush and the burning of same, which is all to be done without expense to the party of the first part, except first party is to hire one man to assist.

"It is further agreed that the second party shall keep the fences upon the said premises in good repair,

performing all labor necessary to be performed without expense to the party of the first part, but that the party of the first part is to furnish all material necessary in connection therewith, and that the party of the second part agrees to perform all and every work on said farm in a suitable and proper manner, and at a seasonable time, and shall obey instructions and orders from the party of the first part in connection with said labor.

"And at the expiration of said term, the said party of the second part will peaceably quit and surrender the said premises in as good state and condition as reasonable use and wear thereof will permit.

"In witness whereof, the parties to these presents have hereunto set their hands and seals, the day and year first above written.

> "(Signed)  George P. Vuich
>                          his
> "Charles   X   Bookhout"
>                      mark.

This contract, it will be noticed, relates back to the time of the oral agreement of the parties made in August, 1915, and manifestly was intended to evidence the contract then made, rather than one made at the time of the signing of the writing. While the written contract provides that respondent was entitled to have one-third of the increase of the live stock and one-third of the profits arising from the raising of chickens and sale of eggs, etc., the fact is that there were no live stock or chickens upon the farm when respondent went there in August, 1915, nor when the contract was reduced to writing in March, 1916, nor were any live stock or chickens upon the farm at any time during the term specified in the contract, other than some work horses from which it was not contemplated that there would be any increase, and to which, manifestly, the contract had no reference in so far as the increase of live stock is concerned. Respondent insists that it was understood that appellant was to furnish and put upon

the farm three brood mares with a view to having them produce colts before the expiration of the term; also, forty hogs, six milch cows, and eight hundred chickens, one-third of the increase of all of which the respondent was to have, as well as one-third of the profits arising from the sale of milk, butter, eggs and other produce and crops resulting from his labor on the farm. On June 15, 1916, respondent, up to that time having in all things complied with the contract on his part, and having performed much labor upon the farm resulting to the benefit of appellant, quit work because appellant had neglected to furnish or place upon the farm any brood mares, cows, hogs or chickens. Up to this time respondent had received practically no compensation, evidently because there had not been, and ordinarily would not be, any returns from the working of the farm up to that time. Thereafter respondent commenced this action seeking recovery, as we have already noticed.

Respondent prayed for reformation of the written contract so that it would in terms require appellant to furnish and place upon the farm brood mares, cows, hogs, and chickens in number as claimed by respondent was agreed upon in the fall of 1915. This apparently was intended to be an alternative claim to that of the right to introduce oral evidence to show such to be the meaning of the contract as written. While the trial court, in its findings, in effect decided that the contract should be so reformed, it ignored the question of reformation in the entering of its final judgment, manifestly proceeding upon the theory that the written contract was sufficiently ambiguous on the question of appellant furnishing live stock and chickens to admit oral evidence of what the contract was in that respect, in effect deciding that the meaning of the written contract, in the light of the situation of the parties, was

as claimed by respondent in that respect, and deciding that the failure of appellant to so furnish live stock and chickens justified respondent in quitting work and rescinding the contract on June 15, 1916, that being past a reasonable time for the furnishing of live stock and chickens as agreed upon. The evidence is all but conclusive that the amount of recovery awarded to respondent by the trial court, if his recovery can be measured by reasonable wages, is proper in amount. Let us remember as we proceed that respondent is not claiming, and that he was not awarded, recovery for anything but his work rendered up to the time of his quitting work. He is not seeking damages for loss of prospective earnings thereafter.

It is contended in appellant's behalf that the superior court erred in receiving oral evidence of the understanding had between the parties as to the furnishing and placing of live stock and chickens upon the farm by appellant. This contention is rested upon the theory that such evidence violated the rule excluding oral evidence tending to vary or contradict the terms of a written contract. It seems to us, however, that a reading of this contract as a whole, in the light of the situation of the parties, shows that this evidence neither varies nor contradicts the terms thereof, but only explains and renders effective the contract in so far as it provides that respondent should have as part of his compensation one-third of the increase of the live stock and one-third of the profits arising from the raising and sale of chickens and eggs. It seems plain that respondent was not to furnish anything but his labor, while appellant was to furnish everything else necessary to the carrying on of the farm as contemplated by the terms of the contract. We think the contract is, in any event, sufficiently vague and uncertain as to the furnishing of live stock and chickens by ap-

pellant to entitle respondent to prove by oral evidence what the contract actually means or was intended to mean in this respect. We conclude that, in view of this vagueness and uncertainty in the terms of the contract and the peculiar situation of the parties, the trial court did not err in receiving oral evidence with a view to interpreting those provisions of the contract which provide for respondent receiving one-third of the increase of the live stock and the profits arising from the raising and sale of chickens and eggs. Our decision in the late case of *Holland-North America Mortgage Co. v. Masters,* 94 Wash. 542, 162 Pac. 995, is in harmony with this view. We do not think our still later decision in *Thompson & Stacy Co. v. Evans, Coleman & Evans,* 100 Wash. 277, 170 Pac. 578, expresses any view of the law to the contrary. Being of the opinion that the oral evidence was admissible because of the vagueness and uncertainty of the terms of the contract, it was unnecessary to reform the contract before it could be given the meaning contended for by respondent. *Roberts v. Stiltner, ante* p. 397, 172 Pac. 738.

It is next contended in appellant's behalf that the written contract and the oral evidence received in interpretation thereof do not warrant the conclusion that appellant was to furnish live stock and chickens as claimed by respondent. There may be fair room for arguing that the contract between the parties did not call for the furnishing of live stock and chickens for the year 1916 to the extent in numbers as claimed by respondent, since it could be fairly argued from the evidence that the talk between the parties touching that matter in some measure had reference to the furnishing of some live stock and chickens after 1916, it being thought possible that the employment of respondent upon the farm might continue after 1916, though no agreement to that effect was entered into.

However, we need not seriously concern ourselves here with the exact measure of appellant's duty as to furnishing live stock and chickens for the year 1916. We are here concerned with his duty only to the extent of determining whether he was to furnish some substantial quantity of live stock and chickens to the end that there would be an increase thereof and profit resulting therefrom during the term of this contract. If appellant was so obligated and failed in this respect, it does not matter that he was not obligated to furnish as large a quantity of live stock and chickens as respondent claims he should have furnished during the term of the contract. We have read the evidence with care, as furnished to us in the abstracts prepared by counsel, and are convinced that there was a substantial failure on the part of appellant to furnish live stock and chickens as agreed by him such as to fully warrant respondent in rescinding the contract and quitting work on June 15, 1916, because of such failure. That respondent would be entitled to rescind the contract and recover for a breach thereof of this nature, the same as if appellant had actually dismissed him from service and put him off the farm, seems clear as a proposition of law. 3 Sutherland, Damages, § 692.

It is finally contended in appellant's behalf that the trial court erred in measuring the amount of respondent's recovery by the reasonable value of his labor during the period he worked upon appellant's farm, that is, from August, 1915, to June 15, 1916, when he quit work, the trial court having measured the recovery by the customary wages per month for such work during that period. The argument is, in substance, that, if respondent was entitled to recover at all, it would be in damages measured by the loss of his prospective earnings, if any he could prove, by reason of his having been prevented from completing his term of service as

provided by the contract. This, it seems to us, calls for a careful noticing of the real relation of the parties and the manifest uncertainty and practical impossibility of proving prospective earnings with any degree of certainty, which uncertainty results from the fault of appellant in failing to furnish live stock and chickens.

Recurring to the contract, we find prominent therein these features: (1) Appellant "employed" respondent "to farm the said premises and to live thereon" for the period specified; (2) Appellant agreed that he would "pay to" respondent "for such labor and services" one-third of the crops, one-third of the increase of the live stock, and one-third of the profits arising from the raising and sale of chickens, eggs and other produce; (3) Appellant agreed to provide everything necessary to that end except labor, while respondent agreed to furnish his labor only; (4) Respondent, by the express terms of contract, was to "devote all his time upon said premises"; (5) Respondent was to labor as he might find time in clearing the uncleared portion of the land; (6) It was agreed that respondent should "perform all and every work on said farm in a suitable and proper manner, and in a reasonable time, and shall obey instructions and orders from the party of the first part (appellant) in connection with said labor." We note these features of the written contract to the end that it may be made plain, as we think they do, that it was a contract of employment creating the relation of master and servant, rather than that of landlord and tenant or landlord and cropper.

The views of the courts are seemingly not in harmony touching the legal relation of parties to farming contracts where the tenant, cropper or employee receives a share of the crop or a share of the proceeds thereof as his profit or compensation. This seeming conflict,

however, arises largely out of the varying situations in which the parties find themselves by reason of the peculiar terms of such contracts in the different cases where they have been considered. See 8 R. C. L. 373. Counsel for appellant invokes the general rule that damages for breach of a contract are to be measured by the loss of the value of the advantage or profit that would result to the party so damaged which he would have if the contract were not breached and he had the opportunity of completing it and reaping the advantage and profit it would give him. We may concede this to be the rule as held by most of the authorities, even as to pure employment contracts where the contract itself furnishes a certain measure of damages, as where the employment is for a specified time at a specified lump sum, or where the compensation is determinable in a lump sum with some fair degree of certainty. In such cases it seems to be the rule that the party injured by the breach of the contract preventing him from completing his service as contracted for entitles him to recover, not the reasonable value of the service he may have rendered, but the value of the service so rendered measured by a proportionate value of the whole service at the whole contract price, and also for loss of future earnings which the employee suffers by the breach of the contract which terminates his service. However, when the contract is one of employment only, and the total compensation agreed upon is as uncertain as under this contract, and the breach by the employer renders proof of prospective earnings by the employee under the contract almost wholly a matter of guesswork, we think the employer is not in position to object to the measuring of recovery by the employee by the reasonable value in wages of services actually rendered to the employer's benefit.

The early decision of this court in *Noyes v. Pugin,*
2 Wash. 653, 27 Pac. 548, is of interest in this connec-
tion. That case involved a contract between an owner
and an architect for the services of the latter looking to
the drawing of plans and the construction of a build-
ing. The contract was, in substance, that the architect
was to be compensated by a certain percentage of the
cost of the building to be constructed. The architect
having prepared the plans, the owner breached the con-
tract by declining to permit the architect to proceed.
He sought recovery, and it was held that the measure of
his recovery was not the reasonable value of his serv-
ices, but the value of his services to the extent they
were rendered in proportion to the entire service to be
rendered and the entire contract compensation. While
in that case there was no specified fixed amount that
the architect was to receive for his entire services,
there was manifestly a basis upon which the entire
amount could be computed and determined with a fair
degree of certainty; that is, the contract itself fur-
nished a fairly certain measure of the damages for its
breach, because the amount of the entire cost of the
building was understood with a fair degree of certainty
at the time of the making of the contract. It was upon
this theory that the court held the architect was not
entitled to the recovery measured by the reasonable
value of his services. It was observed by Chief Justice
Anders, writing the opinion, at page 660, that:

"It was not shown in this case that it was imprac-
ticable to apportion the value of plaintiff's services
according to the rate of compensation claimed to have
been stipulated for, and we are therefore of the opinion
that the court below should have instructed the jury
that, if they found that the plaintiff performed the
services claimed to have been rendered by him under a
contract specifying the price to be paid for doing the

whole work agreed to be done by him, the measure of his recovery would be such a proportion of the contract price as the work done bore to the whole work embraced by the terms of the agreement, and that the failure to so instruct was error.''

In *Chase v. Smith,* 35 Wash. 631, 77 Pac. 1069, we have a somewhat similar situation.  There a painter was to paint a certain number of houses for a specified lump sum; the owner was to furnish a certain part of the material and the painter to furnish a certain part of the material.  Upon a breach of the contract by the owner, as in the *Noyes* case, it was held that the painter was not entitled to recover the reasonable value of his services, but the value of his services measured by the contract price as a whole.  In *Gabrielson v. Hague Box & Lumber Co.,* 55 Wash. 342, 104 Pac. 635, 133 Am. St. 1032, some observations are made indicating the view of the court that, upon a breach of a labor contract by the employer, the employee may, if he so elects, sue upon *quantum meruit* and recover the reasonable value of his labor, citing the *Noyes* and *Chase* cases above noticed.  This observation is, of course, subject to qualification as applied to varying circumstances, but it is some indication, read in the light of the *Noyes* and *Chase* cases, of the view of the court favorable to respondent's contentions in this case.  Now, in the case before us, we think it is readily to be seen that there is no measure other than one of pure guesswork of what would be the amount of respondent's recovery if he is compelled to look only to his prospective earnings under the contract, in so far as his earnings from the increase of the live stock and that resulting from the raising and sale of chickens and eggs are concerned, and it seems plain that this was to be a very large part of his earnings within the contemplation of the parties

to the contract. This, we think, is wherein this case differs materially from the *Noyes* and *Chase* cases above noticed.

Under all the circumstances here shown, we are constrained to hold that, since the relation between respondent and appellant was that of employer and employee, since the amount of respondent's recovery would be so uncertain by the adoption of the measure insisted upon by appellant, since respondent was placed in this position by the fault of appellant, and since respondent is seeking recovery for past services only, we think appellant should not be heard to object to the measuring of respondent's recovery by reasonable wages for the work actually performed to his benefit. We think it would not be profitable or enlightening to here review the numerous decisions dealing with farm contracts.

The judgment is affirmed.

ELLIS, C. J., WEBSTER, MAIN, and FULLERTON, JJ., concur.