[No. 14611. Department One. April 30, 1918.]

CRANE COMPANY, *Respondent,* v. MARYLAND CASUALTY COMPANY, *Appellant,* J. G. MUSGRAVE *et al.,* *Respondents.*[1]

STATES—CONTRACTOR'S BONDS—LIABILITY OF SURETY—SUBLETTING. Where a subcontract on a state building was not consented to or recognized by the state or bonding company, there was no such assignment or "subletting" as to release the surety on the contractor's bond, under the clause therein providing that the contractor shall not assign the contract or sublet any portion thereof without the written consent of the board of control and the bonding company; the clauses meaning only that there shall be no substitution of parties without the written consent of both the state and the surety.

SAME—CONTRACTOR'S BONDS—LIABILITY OF SURETY—SUPPLIES TO SUBCONTRACTOR. A contractor's bond given under Rem. & Bal. Code, §§ 1159 and 1161, for the benefit of all laborers and materialmen and all persons "who furnish subcontractors with provisions and supplies" for carrying on the work, covers supplies furnished to any subcontractor which were actually used in the building.

Appeal from judgments of the superior court for King county, Gilliam, J., entered September 8, 1917,

[1]Reported in 172 Pac. 866.

upon findings in favor of the plaintiff and certain de-
fendants, in an action on a contractor's bond, tried to
the court. Affirmed.

*Grinstead & Laube,* for appellant.

*Walter S. Fulton,* for respondent Crane Company.

*Farrell, Kane & Stratton,* for respondents Musgrave
*et al.*

PARKER, J.—This is an action upon a bond, executed
by the defendant Maryland Casualty Company, as
surety, and Beers Building Company, as contractor
and principal, as provided by Rem. Code, §§ 1159-1161,
relating to bonds of contractors to secure laborers, me-
chanics, subcontractors and materialmen furnishing
labor and material for the carrying on of public work.
Trial in the superior court for King county sitting
without a jury resulted in findings and judgment in
favor of the plaintiff, Crane Company, and against the
defendant casualty company in the sum of $2,190.99,
and a judgment in favor of the defendants Musgrave
and Blake, upon their cross-complaint against the de-
fendant casualty company, in the sum of $130.62. From
this disposition of the cause, the casualty company has
appealed to this court.

On October 7, 1915, the state of Washington, by its
board of control, entered into a contract with Beers
Building Company by which that company agreed to
furnish the labor and material for, and to construct,
the plumbing and heating system of the administration
building of the State Institute for the Blind, at Van-
couver, according to plans and specifications prepared
therefor and by reference made a part of the contract.
The specifications so made part of the contract con-
tained, among other provisions, the following:

"The contractor shall not assign this contract nor sublet any portion thereof without the written consent of the board of control and the bonding company."

Beers Building Company was to receive as compensation for the work the sum of $7,260, payable in monthly installments as the work progressed, on the basis of 85 per cent of the value thereof, the balance to be paid in thirty days following the completion of the work. On October 13, 1915, the bond here sued upon was executed by Beers Building Company, as principal, and the defendant Maryland Casualty Company, as surety, in the sum of $7,260. It contained recitals and conditions as the law required as follows:

"This bond is executed in pursuance of sections 1159 and 1161 of Remington and Ballinger's Annotated Codes and Statutes of the state of Washington, as amended by chapter 28 of the Session Laws of 1915, and is subject to all of the provisions thereof, and is entered into with the state of Washington, for the use and benefit of all laborers, mechanics, subcontractors and materialmen and all persons who shall supply such person or persons or subcontractors with provisions and supplies for the carrying on of the work covered by the contract entered into on the 7th day of October, 1915, between the above bounden principal, Beers Building Co., and the said state of Washington, for the plumbing and heating system of the administration building for the State Institution for the Blind at Vancouver, Washington, according to the terms and conditions of said contract.

"And the conditions of this obligation are such that if the said principals shall faithfully perform all the provisions of said contract not in conflict with said chapter 28 of the Laws of 1915, and pay all laborers, mechanics, and subcontractors and materialmen, and all persons who shall supply such person or persons, or subcontractors with provisions and supplies for the carrying on of such work . . . then this obligation shall be null and void; otherwise to remain in full force and effect."

On November 19, 1915, Beers Building Company entered into a contract with the defendants Musgrave and Blake by which they were to furnish the labor and material for, and to construct, the plumbing and heating system as contracted for by Beers Building Company with the state. Musgrave and Blake were to receive from Beers Building Company as compensation therefor the sum of $7,000, payable in monthly installments as the work progressed, on the basis of 80 per cent of the value thereof, the balance to be paid in thirty days following the completion of the work, but all such payments to be made after monthly payments made by the state to Beers Building Company on its contract. By the terms of the original and subcontracts, the work was to be completed by September 15, 1916. The work was to be done under the supervision of the state's architect, who was also to make the estimates for the monthly payments as the work progressed. Musgrave and Blake proceeded with the work under their contract, and between February 1, and June 28, 1916, Crane Company furnished to them plumbing goods and supplies for the work of the reasonable value of $3,207.93, of which there remains unpaid and due to the Crane Company the sum of $2,190.99. All of this material was furnished by Crane Company for, and actually went into the construction of, the plumbing and heating system of the building, and was suitable therefor. Musgrave and Blake did not complete the work, but their failure to do so was because of the failure of Beers Building Company to pay them according to the terms of their contract, Beers Building Company having received at least $1,750 on May and prior installments upon its contract with the state, no part of which was paid by it to Musgrave and Blake. For this reason, Musgrave and Blake quit the work the last of June, 1916, leaving it

uncompleted. Beers Building Company having neglected to proceed with the work, the board of control declared its contract forfeited and at an end, and after tendering the completion of the work to the casualty company, as surety, and it also neglecting to proceed with the work, the board of control caused the work to be completed. The work and material furnished by Musgrave and Blake, including that furnished to them by the Crane Company, less the payments made to them by Beers Building Company, amounted to $130.62 in excess of the amount due Crane & Company, measured by the terms of Musgrave and Blake's contract with Beers Building Company, and was reasonably worth that amount. No formal written consent was ever given by the board of control or the casualty company to the making of the subcontract between Beers Building Company and Musgrave and Blake. That contract was never recognized by the board of control or its architect as in any sense a substitution for the contract between Beers Building Company and the state. In other words, the state at all times looked to Beers Building Company for the completion of its contract, and in so far as the board of control or the state's architect directed Musgrave and Blake in the performance of the work, such direction was to Musgrave and Blake merely as the representatives of Beers Building Company.

It is contended in behalf of appellant casualty company that it is not liable upon its bond to either Musgrave and Blake or Crane Company, because neither it nor the state consented in writing or otherwise to the making of the subcontract between Musgrave and Blake and Beers Building Company. Many authorities are cited and reviewed by counsel to support the proposition that the stipulation in the contract between. Beers Building Company and the state that it should

not "assign" nor "sublet" the contract, or any portion thereof, without the written consent of the "board of control and the bonding company" is a valid and binding stipulation. We may concede this for the sake of argument, yet we think this falls far short of calling for a holding in this case that the casualty company is not liable upon its bond to both Musgrave and Blake and Crane Company. Reading this stipulation in the contract between Beers Building Company and the state in the light of the express condition in the bond and the statute in pursuance of which the bond was executed, it seems to us that the stipulation means nothing more than that no assignment of the contract and no subcontract made thereunder without the written consent of the board of control and the bonding company shall be of any avail in the working of a change in the contractual relations and the obligations arising thereunder as between the state, Beers Building Company and the bonding company which should thereafter become surety upon the bond. In other words, this provision, we think, means only that there shall not be any substitution of parties in place of Beers Building Company in its contract with the state, releasing that company from any obligation under its contract without the consent of both the state and the bonding company which should thereafter become surety upon the bond. Apparently this stipulation was to guard against the possibility of an impairing of the rights of the state against Beers Building Company and the surety, and also render certain that there should be no impairment of the rights of those for whose benefit the bond should be given, as against the surety thereon.

There was no effectual assignment or subletting of the original contract in this sense, because the subcontract was not consented to by either the state or the

casualty company, and besides, it seems quite apparent to us that there was no intention on the part of Beers Building Company and Musgrave and Blake that there should be any assignment or subcontract in this sense. This seems plain from a casual reading of the subcontract entered into between them. The state, as contemplated by the terms of this contract, was to pay Beers Building Company, and that company was to pay its subcontractors, Musgrave and Blake, just as it would pay laborers or materialmen. It is equally plain that the state never regarded this contract in any other light. The board of control continued at all times to look to Beers Building Company for the completion of its contract, until its rights thereunder became forfeited and were put an end to by the board of control because of its failure to perform its contract. We conclude, therefore, that Musgrave and Blake were never intended to become, and never did become, subcontractors within the meaning of the above quoted provision in the original contract between Beers Building Company and the state, prohibiting the assigning and subletting of that contract by Beers Building Company without consent of the board of control and the bonding company. We are equally well satisfied that Musgrave and Blake did become, and were intended by all parties to become, subcontractors within the meaning of the bond and the statute in pursuance of which it was executed, and that Musgrave and Blake thereby became in legal effect the agents of Beers Building Company for the purchase of plumbing supplies for the carrying on of the work, in pursuance of which agency they purchased the material from Crane Company.

Contention is made in behalf of appellant casualty company that there was no privity of contract between Crane Company and Beers Building Company render-

ing it liable upon its bond to Crane Company. What we have already said seems to us to effectually answer this contention, in view of the express provisions of the statute and the bond. The supreme court of the United States, in *Hill v. American Surety Co.,* 200 U. S. 197, seems to take the view that a surety upon a bond executed under a statute seemingly less comprehensive in terms than ours is liable to those furnishing material even indirectly through a subcontractor to the contractor, though the statute and bond given in pursuance thereof did not expressly so provide, but provided only for the payment by the surety to persons supplying the contractor with labor or material. That case was originally determined in the superior court for King county, in this state, and there being less than $200 involved, and that court being by our constitution the court of last resort as to such cases, the case was taken directly by writ of error to the supreme court of the United States. It was a suit upon a bond given in pursuance of a Federal statute entitled "An act for the protection of persons furnishing material and labor for the construction of public works" (act Cong. Aug. 13, 1894, c. 280, 28 Stat. 278 [U. S. Comp. St. 1916, § 6923]), wherein it was provided that the bond should be conditioned that the contractor "shall promptly make full payments to all persons supplying it labor or materials in the prosecution of the work." The contractor sublet a portion of the work. The subcontractor employed Hill, who sought recovery upon the bond. It was argued that Hill did not come within the meaning of the statute and bond, in that he did not furnish work to the contractor because such work was not directly so furnished, but only to the subcontractor, and the statute was silent as to the furnishing of work or material to a contractor through a subcontractor.

Disposing of this contention, Justice Day, speaking for the supreme court of the United States, said:

"In view of the declared purpose of the statute, in the light of which this bond must be read, and considering that the act declares in terms the purpose to protect those who have furnished labor or material in the prosecution of the work, we think it would be giving too narrow a construction to its terms to limit its benefits to those only who supply such labor or materials directly to the contractor. The obligation is 'to make full payments to all persons supplying it with labor or materials in the prosecution of the work provided for in said contract.' This language, read in the light of the statute, looks to the protection of those who supply the labor or materials provided for in the contract, and not to the particular contract or engagement under which the labor or materials were supplied. If the contractor sees fit to let the work to a subcontractor, who employs labor and buys materials which are used to carry out and fulfill the engagement of the original contract to construct a public building, he is thereby supplied with the materials and labor for the fulfillment of his engagement as effectually as he would have been had he directly hired the labor or bought the materials."

Our statute not only in express terms secures subcontractors, but in equally express terms it secures those who furnish "subcontractors with provisions and supplies for the carrying on of such work." We do not have to go even to the extent the supreme court of the United States did in the *Hill* case in order to hold the casualty company liable to Crane Company in this case.

Contentions are made by counsel for appellant casualty company against the judgment rendered in favor of Musgrave and Blake. It seems to us that these contentions present only questions of fact, that is, as to the amount due Musgrave and Blake and as to their being in default upon their subcontract. We

think the evidence fully warrants the conclusion that they were not in default and that they quit work only because Beers Building Company neglected to pay them according to the terms of their subcontract, and that the evidence also fully warrants the conclusion that Musgrave and Blake were entitled to receive from Beers Building Company the $130.62 awarded them in excess of the $2,190.99 awarded Crane Company, who had furnished them plumbing supplies in the carrying on of the work.

Both judgments are affirmed.

ELLIS, C. J., FULLERTON, WEBSTER, and MAIN, JJ., concur.