[No. 15803. Department One. September 8, 1920.]

DYER BROTHERS GOLDEN WEST IRON WORKS, *Plaintiff*, v. HANS PEDERSON et al., *Defendants*.[1]

MUNICIPAL CORPORATIONS (163)—IMPROVEMENTS—CONTRACTS—SUB-LETTING—VIOLATION OF CHARTER—RIGHTS AND LIABILITIES OF PARTIES. A subcontract for part of the work of constructing a bridge, entered into in violation of a charter provision "that no contract shall be sublet except for the furnishing of material, without the previous consent of the city council," is voidable at the election of either party thereto prior to consent by the city council; and when so avoided by breach thereof and notice of abandonment of the work by the subcontractor, all claimed rights of the parties thereunder as then or thereafter accruing, as in case full performance had been made, ceased to exist and it could no longer be the basis of an action for its breach.

SAME (181) — CONTRACT — BREACH — RIGHTS OF PARTIES UNDER VOIDABLE CONTRACT. Although such contract was voidable at the election of either party thereto prior to consent by the city council, and was unenforceable as an executed contract, nevertheless, it not

[1]Reported in 192 Pac. 1002; 197 Pac. 622.

being immoral or void for want of consideration, there was created
an enforceable legal obligation in favor of the subcontractor for
services rendered thereunder up until the time of his abandonment
of the work, the value of which will be measured by the terms of
the contract; and it appearing that the subcontract was half com-
pleted at the time of its abandonment and that the contractor had
paid thereon more than half the total contract price, such payment
constituted a complete satisfaction of the obligation arising in favor
of the subcontractor and he could recover nothing more under the
contract.

ON REHEARING.

SAME (154, 181)—IMPROVEMENTS — CONTRACTS — VALIDITY — SUB-
LETTING — VIOLATION OF CHARTER — BREACH OF CONTRACT — RIGHTS
AND LIABILITIES OF PARTIES.  A charter provision against the sub-
letting of a city contract without the consent of the city is for the
sole benefit of the city and does not invalidate a subcontract as be-
tween the parties to it, until the principal contract is terminated by
the city for want of consent (PARKER, C. J., and HOLCOMB, J., dis-
senting).

Appeals from a judgment of the superior court for
King county, Ronald, J., entered December 4, 1919, in
an action to foreclose a mechanics' lien, tried to the
court.  Affirmed.

*Corwin S. Shank* and *H. C. Belt,* for appellant Erick-
son Construction Company.

*Roberts & Skeel,* for appellants Pederson *et al.*

*Grinstead & Laube* and *W. M. Whitney,* for respond-
ent Fidelity & Deposit Company of Maryland.

PARKER, J.—This action was originally commenced
by the plaintiff, Dyer Brothers Golden West Iron
Works, seeking recovery from the defendant Pederson,
and Fidelity & Deposit Company, for the furnishing of
structural steel for a large bridge · constructed by
Pederson under a contract with the city of Seattle;
Fidelity & Deposit Company being surety upon the
bond furnished by Pederson to secure the faithful per-
formance of the contract, and the payment of laborers,

subcontractors, and materialmen, as prescribed by § 1159, Rem. Code. The plaintiff also sought to have its recovery made a charge upon funds in the hands of the city payable to Pederson upon the contract. The defendant Erickson Construction Company filed its answer and cross-complaint, seeking recovery of compensation from the defendant Pederson and the Fidelity & Deposit Company, and also from the fund, for the furnishing of labor and superintendence in the excavation for the piers of the bridge. Pederson responded to this cross-complaint of Erickson Construction Company by answer and cross-complaint, alleging, in substance, that the Erickson Construction Company had entered upon the work of excavation and partially completed it, in pursuance of an express oral contract with him to do the same for the lump sum of $18,000, according to the specifications of his contract with the city; that Erickson Construction Company abandoned the work, leaving it unfinished, resulting in his damage in the sum of $27,431, which amount he necessarily expended in excess of the $18,000 he would have paid to Erickson Construction Company had the work been completed under its contract. Pederson prayed for recovery of damages against Erickson Construction Company accordingly. A trial of these issues in the superior court for King county, upon the merits, resulted in a decree denying recovery both to Erickson Construction Company and to Pederson. From this disposition of their respective claims, both Erickson Construction Company and Pederson have appealed to this court.

All parties to the action having proceeded upon the theory that it is of equitable cognizance, the trial court concluded that formal findings of fact were unnecessary, and did not make findings apart from the recitals

in the decree, which, after reciting the making of the original contract between Pederson and the city for the construction of the bridge, reads in part as follows:

". . . on or about August 24th, 1915, the defendant Erickson Construction Company entered into a contract with the defendant Hans Pederson for excavation and construction of coffer dams on the said Fifteenth Avenue Northwest Bridge, Seattle, Washington, for the lump sum of $18,000, upon which construction the defendant Erickson Construction Company entered, and that thereafter the said Erickson Construction Company breached said contract and abandoned the said work, and that, as a result of the said abandonment of said work, and the breach of the said contract and the refusal of said Erickson Construction Company to proceed further, the said Pederson was damaged in the extent of $23,369.69, with interest at the rate of six per cent per annum from November 4th, 1916, the same being the cost to the said Pederson to complete the contract upon which the said Erickson Construction Company had entered.

"Thereafter and in due time the Erickson Construction Company filed a motion for new trial, and said motion for new trial having come on for hearing, and having been on the 20th day of November, fully argued and heard, the court, on the 24th day of November, 1919, handed down his decision upon the motion for new trial, finding and holding that the whole case was controlled by section X of article VIII, paragraph 2, of the city charter of the city of Seattle, which reads as follows:

" 'Bids may be received for all or any part or division of any proposed contract and no contract shall be sublet except for the furnishing of material without the previous consent of the city council.' "

and that Hans Pederson had, in violation of said charter provision, sublet the contract in question to the Erickson Construction Co., and that said subletting, being in violation of the city charter, was void, and that Hans Pederson could not recover upon said

contract because of its invalidity, to which, and to all of which, the defendants Hans Pederson and the Fidelity & Deposit Co. of Maryland duly excepted and except.

"It is, therefore, now by the court ordered, adjudged and decreed:

"That the action of Erickson Construction Co. as against Hans Pederson be dismissed, to which counsel for Erickson Construction Co. excepted and except.

"It is further ordered, adjudged and decreed that the action of Hans Pederson on his cross-complaint as against the Erickson Construction Co. be dismissed, to which Hans Pederson excepted and excepts."

We are not here concerned with the rights of other parties adjudicated by the decree. In so far as these findings may be considered as findings of fact, they were duly excepted to by counsel for Erickson Construction Company. The exception by counsel for Pederson, noted in the decree, is manifestly nothing more than an exception to the court's conclusion of law that the subcontract between him and Erickson Construction Company was void because not consented to by the city council, as prescribed in the city charter provision above quoted in the recitals of the decree.

It seems to be necessary for us to first answer the inquiry, Was there a subcontract, apart from the question of its validity, entered into between Erickson Construction Company and Pederson, as recited in the decree, for the performance of which, by Erickson Construction Company, it was to be paid by Pederson the lump sum of $18,000? That the trial judge was so convinced, treating the question purely as one of fact, there seems no room for doubting, in view of the recitals in the decree, above quoted. A reading of the evidence, as set forth in the abstracts thereof prepared by counsel for the respective parties, convinces us, as

manifestly it did the trial court, that there was such a meeting of the minds of Erickson Construction Company and Pederson in the making of the contract; that its terms were certain and well understood by each; that Erickson Construction Company commenced and proceeded in the performance of the contract for a period of some three months before abandoning the work, then notifying Pederson that it would not proceed further with the work; and that Pederson had then paid to Erickson Construction Company upon the contract sums aggregating $9,898. We think it would be quite unprofitable to here review the evidence in detail.

The principal contentions here made by counsel for Erickson Construction Company seem to be that, in any event, the contract between it and Pederson was void and of no effect, because of the failure of the city council to consent thereto; that therefore it is entitled to recover in this action as upon *quantum meruit*, and have its recovery measured by the reasonable value of the labor and services actually furnished by it to Pederson, irrespective of the compensation therefor specified in the contract; and that, because of the invalidity of the contract, Pederson has no basis upon which to rest his counterclaim for damages by reason of the alleged breach thereof by Erickson Construction Company. Counsel for Pederson contend that the contract was not void, or even voidable, as between him and Erickson Construction Company, and that therefore he is entitled to damages as against it, because of its breach of the contract. We feel constrained to hold that the contract was voidable at the election of Erickson Construction Company at any time prior to the consenting thereto by the city council, and, when timely so avoided, it ceased to exist or have any controlling influence upon

the rights of either party thereto claimed as then or thereafter accruing under it. We are unable to escape this conclusion, in view of the express provision of the city charter that "no contract shall be sublet except for the furnishing of material, without the previous consent of the city council." This is not a mere provision of the original contract entered into between Pederson and the city for the construction of the bridge, but it is a positive declaration of law. Counsel for Pederson rely upon our decisions in *Wohlforth v. Kuppler,* 77 Wash. 339, 137 Pac. 477, and *Crane Co. v. Maryland Casualty Co.,* 102 Wash. 59, 172 Pac. 866.

We think a careful reading of those decisions will render it plain that in neither of them was there involved any question of a subcontract being void or voidable because entered into in violation of a positive provision of statutory law; but that in those cases there was under consideration only the fact of the failure to observe provisions in the principal contract relating to the necessity of consent on the part of public officials to the entering into subcontracts by the principal contractor. Under the peculiar facts of those cases, the subcontracts were recognized as enforcible by the court. This contract might be so recognized if it had been fully performed by Erickson Construction Company, instead of being abandoned by it and thereby rendered void as to obligations arising under it in the future. Being of the opinion that this contract was voidable at any time at the election of either of the parties thereto, it not being consented to by the city council, and when so avoided, as it was by Erickson Construction Company's abandonment of the work when it notified Pederson of such action, the contract we think could no longer be the basis of a right of action for its breach, though, as we shall presently see,

its terms still furnish the measure of Erickson Construction Company's compensation for services rendered by it to Pederson thereunder. Had the work been entirely completed by Erickson Construction Company, as contemplated by the contract, and the work accepted by the city, manifestly there would have been no cause of action in favor of Pederson for its breach. In such event, the terms of the contract would, in any event, have measured the amount of compensation Erickson Construction Company would lawfully be entitled to receive for services rendered thereunder. The contract being so fully performed by Erickson Construction Company, and it not being immoral in its nature, there would be nothing in the way of the court giving it full force and effect, when nothing remained for the court to determine save the question of the measure of the Erickson Construction Company's compensation for its full performance.

Notwithstanding the contract was not in law enforcible, strictly as such, by either party thereto, both parties were proceeding under it, assuming that it was valid and binding as to them, up until the time of the abandonment of the work by Erickson Construction Company, at which time Pederson had paid to it upon the contract, $9,898, being more than half of the total contract price for the work. At that time, we think it safe to assert, in the light of the evidence, the work which Erickson Construction Company undertook to do for the lump sum of $18,000 was approximately half completed. The evidence does not show this fact with exactness, but we think, in view of the total cost of the work and the amount Pederson was compelled to expend in its completion, it is, in any event, fairly certain that Erickson Construction Company was paid by Pederson in the aggregate as much as it was entitled

to, if its compensation at the time of its abandonment of the work is to be measured with reference to the total compensation of $18,000, agreed upon in the contract.

Now this contract, while prohibited by law, and therefore in a sense against public policy, was not within itself immoral. It was not of that class of contracts which the law condemns in that extreme sense of refusing all claimed relief to the parties thereto rested upon acts performed under and in compliance with its terms. In other words, the contract was not of that class as to which the court will leave the parties where it finds them, as to all claimed rights of one as against the other rested upon and growing out of acts done in the performance of the contract. The fact that such a contract is voidable, since it is not immoral, does not mean that one party may keep, without compensation, that which he has received from the other under the contract; nor that one party, after he has rendered service to the other by the doing of acts, free from taint of immorality or want of consideration, as contemplated by the contract, shall have no right of compensation. We think that enforcible legal obligations may be so created in favor of one party to the contract as against the other, though the contract be voidable and unenforcible as an unexecuted contract. This, we think, is the position we find these parties in, or rather the position they would be in were it not for the fact that the legal obligation arising in favor of Erickson Construction Company, as against Pederson, has been already fully satisfied by Pederson by the payment by him of approximately one-half of the agreed compensation for the work furnished and performed by the Erickson Construction Company, which was, as we have seen, approximately one-half of the work it agreed to furnish and perform.

Are we correct in measuring the amount Erickson Construction Company was entitled to receive for its part performance of the contract, by reference to the $18,000 specified in the contract as the entire compensation it was to receive for the work? It seems to us these parties are simply in the position they would be had the contract been in all respects valid and terminated by either of them under legal right to so do. In such cases we think this court is committed to the view that, notwithstanding the contract has no binding force after such termination, its terms are to be looked to for the measuring of the amount of recovery one party thereto is to receive from the other party as compensation for something furnished such other party under the terms of the contract. *Noyes v. Pugin*, 2 Wash. 653, 27 Pac. 548; *Chase v. Smith*, 35 Wash. 631, 77 Pac. 1069; *Bookhout v. Vuich*, 101 Wash. 511, 172 Pac. 740. It is plain that, under the terms of this contract, there is no difficulty in measuring the value of the service furnished and rendered by Erickson Construction Company to Pederson by the terms of the contract which specifies a fixed compensation of $18,000 for the whole of the work. The portion of the whole of the work which was performed being determinable with a fair degree of certainty, it seems plain to us that Erickson Construction Company was entitled to receive a like portion of the agreed total compensation. This, as we have seen, it has received.

We conclude that Erickson Construction Company cannot recover, because the compensation it was entitled to receive for work done under its contract with Pederson has been fully satisfied by payment on the part of Pederson; and that, since the contract was rendered nonenforcible as a whole at the election of Erickson Construction Company, Pederson has no cause of action for breach thereof.

The judgment is affirmed. Neither party will recover costs in this court.

HOLCOMB, C. J., TOLMAN, MITCHELL, and MAIN, JJ., concur.

## ON REHEARING.

[En Banc. April 14, 1921.]

BRIDGES, J.—The foregoing Department opinion in this case contains a complete recital of the facts, and we refer to that opinion. The only facts necessary for us here to recite are as follows: The charter of the city of Seattle contains the following clause:

"Bids may be received for all or any part or division of any proposed contract, and no contract shall be sublet except for the furnishing of material, without the previous consent of the city council."

The city of Seattle entered into a contract with the defendant Pederson, which provided that the latter should furnish all material and labor and construct a certain bridge within that city. This contract provided that all provisions of the charter and ordinances of the city, in so far as they were material, should become a part thereof. Thereafter Pederson and the defendant Erickson Construction Company entered into an oral contract whereby the latter was to do a certain portion of the work required by the city contract, for which it was to receive from Pederson the sum of $18,-000. The construction company, having performed a part of the work provided by its contract, terminated it and refused to do any further work, because the written consent of the city for the making of the contract between it and Pederson, as provided by the city charter, had not been obtained. Pederson thereafter completed the work which by the terms of the contract the construction company was to do. As a defendant in this action, the construction company filed a cross-

complaint against its co-defendant Pederson, seeking
to recover a balance claimed to be due and owing on
account of the work performed by it, and Pederson
filed a cross-complaint against his co-defendant Con-
struction Company, seeking to recover damages be-
cause of the failure of the construction company to
complete the contract between them. Only the rights
under the two cross-complaints are now involved. We
adopt those portions of the Department opinion which
dispose of the cross-complaint of the Erickson Con-
struction Company and the holding that the construc-
tion company has been paid by Pederson all it was en-
titled to receive for the work performed by it. We do
not, however, adopt those portions of the Department
opinion which hold that Pederson cannot recover under
his cross-complaint for damages. On this question the
construction company argues that it had the right to
terminate its contract with Pederson because it was in
violation of the city charter provision against sublet-
ting, and that such contract was void, or at least void-
able at its election. Pederson denies the right to termi-
nate the contract and contends that he should recover
on his cross-complaint because (1) his contract with
the construction company did not violate the city
charter provision, and, (2) if it did, it was good and
enforceable between the parties to it.

Elaborate arguments have been made on the con-
struction to be given to that provision in the charter
which prohibits subletting of contracts, and on the
question whether the Erickson Construction Company-
Pederson contract violated that provision. But we do
not find it necessary to decide this question. If it be
conceded that this charter provision is applicable to
the contract between Pederson and the construction
company, and that such contract was in violation of

that provision, it does not follow that Pederson may not recover on his cross-complaint. The provision against subletting was for the sole benefit and protection of the city, and no one else would have the right to claim its protection or seek benefits under it. It could not have the effect of invalidating or making void the Pederson-Construction Company contract. The most it could do would be to authorize the city, if it saw fit, to terminate its contract with Pederson. The subcontract, even if it was in violation of the charter, was good and valid as to, and binding upon, the parties to it, at least, up to the time the city should take some affirmative action. Here the city did nothing more than refuse to recognize the construction company; it did not terminate its contract with Pederson, nor in any way interfere with the construction company in the performance of its subcontract. From all that appears from the record, the construction company could, without opposition from anyone, have completed its contract with Pederson. Suppose Pederson had terminated his contract with the construction company, for the identical reason given by the latter for refusing to go ahead with the work, and the construction company had sued Pederson for a breach of the contract, he could not have successfully defended. If, then, Pederson would not have had any right to terminate his subcontract on those grounds, we can see no reason why the construction company could terminate it on the same ground. An examination of the leasehold cases will be enlightening. In the case of *Bemis v. Wilder,* 100 Mass. 446, the court, in discussing this question, said:

"The plaintiffs claim as assignees of the defendant's interest in the lease, by an unrecorded assignment from the defendant's assignee in insolvency. The court declined to rule that the lease was not transferred to the

plaintiffs without the consent in writing required in its terms, and that the assignment from the assignee in insolvency was insufficient to give a right to the plaintiffs, as against the defendant, for the reason that it had not been recorded. There is no error in these refusals. It is not for the defendant to set up the breach of his own covenant not to lease or underlet, to defeat the plaintiff's right. That stipulation was inserted for the benefit of the lessor and those claiming under him, who alone can take advantage of any breach. The stipulation here is in the form of a covenant, and not a condition with a right of entry reserved. But if the agreement had been of the latter description, the lease would have been valid until the lessor had exercised his option to terminate it, which he has never done.''

In *Garcia v. Gunn,* 119 Cal. 315, 51 Pac. 684, it is said:

''It seems to be the law that where there is a clause in a lease that it shall not be assigned without the previous consent of the lessor, and there is a breach of the covenant not to assign, the lessor has only the option to forfeit the lease for the breach of the condition, and that the assignment is not void but passes the term, and the only remedy is for breach of the covenant . . . ; and it has been held that the assignment is voidable only at the option of the lessor or his representatives.''

In 24 Cyc. 968, the following rule is laid down:

''Restrictions against assignment or subleases, whether imposed by statute or by the terms of the lease, are intended for the benefit of the lessor and his assigns, and if neither of these object to a breach of the restriction no one else may do so. One to whom the term has been assigned in breach of the restriction cannot set up the breach in defense of an action brought against him by the lessor on the lease, or in defense of an action brought against him by the lessee on obligations incident to the assignment; nor can a sublessee of the assignee set up the breach in defense of an ac-

tion brought against him by the assignee on the sub-
lease.''

In 18 Am. & Eng. Ency. Law (2d ed.) 660, it is said:

''So also an assignment of a lease, though in viola-
tion of a provision against assignment, carries title to
the leasehold as between the assignee and a stranger,
or as between the lessee and his assignee, or as be-
tween the assignee and subtenants of the lessee. But
an assignment without the consent of the lessor will
not transfer to the assignee the right to sue the lessor
on his covenants in the lease, though they were such as
would have run with the term had the leasehold been
assignable.''

To the same general effect see *McGhee v. Cox*, 116
Va. 718, 82 S. E. 701, Ann. Cas. 1916E 842; *Potts Drug
Co. v. Benedict*, 156 Cal. 322, 104 Pac. 432, 25 L. R. A.
609; *Thompson & Co. v. Gray*, 15 Ky. Law 783; *Spear
v. Fuller*, 8 N. H. 174, 28 Am. Dec. 391; *Sexton v. Chi-
cago Storage Co.*, 129 Ill. 318, 21 N. E. 920, 16 Am. St.
274; *Chicago Attachment Co. v. Davis Sewing Ma-
chine Co.*, 33 Ill. App. 362, 25 N. E. 669.

It would seem that, upon authority and reason, a
provision in a lease prohibiting subletting is for the
benefit of the lessor and does not in itself make a con-
tract of subletting void, but leaves it good as between
the parties to it. If such be the law with reference to
leases, we see no reason why it should not be the law
with reference to contracts such as the one here in-
volved. We believe an examination of the contract
cases will support us in this view.

In the case of *Crane Co. v. Maryland Casualty Co.*,
102 Wash. 59, 172 Pac. 866, the facts were that the
state let a certain contract to the Beers Building Com-
pany. It provided as follows: ''The contractor shall
not assign this contract nor sublet any portion thereof
without the written consent of the board of control and

the bonding company.'' In accordance with the provisions of the contract and the statutes of the state, Beers Building Company gave a bond for the performance of the work, with the Maryland Casualty Company as surety. Later, the building company sublet the whole of the work to Musgrave and Blake. The latter purchased from Crane Company materials for which they did not pay. Crane Company sued Musgrave and Blake, the subcontractors, and the surety on the original bond for the amount of its unpaid bill. The surety company defended on the ground that it was not liable either to Musgrave or Blake or the Beers Building Company, because neither it nor the state had consented in writing or otherwise to the making of the subcontract. We said:

''Many authorities are cited and reviewed by counsel to support the proposition that the stipulation in the contract between Beers Building Company and the state that it should not 'assign' nor 'sublet' the contract, or any portion thereof, without the written consent of the 'board of control and the bonding company' is a valid and binding stipulation. We may concede this for the sake of argument, yet we think this falls far short of calling for a holding in this case that the casualty company is not liable upon its bond to both Musgrave and Blake and Crane Company. Reading this stipulation in the contract between Beers Building Company and the state in the light of the express condition in the bond and the statute in pursuance of which the bond was executed, it seems to us that the stipulation means nothing more than that no assignment of the contract and no subcontract made thereunder without the written consent of the board of control and the bonding company shall be of any avail in the working of a change in the contractual relations and the obligations arising thereunder as between the state, Beers Building Company and the bonding company which should thereafter become surety upon the bond. In other words, this provision, we think, means

only that there shall not be any substitution of parties in place of Beers Building Company in its contract with the state, releasing that company from any obligation under its contract without the consent of both the state and the bonding company which should thereafter become surety upon the bond.''

In the case of *Burck v. Taylor,* 152 U. S. 634, the court, in discussing a similar provision in a contract, said:

''The express declaration that so far as the United States are concerned a transfer shall work an annulment of the contract, carries, by clear implication, the declaration that it shall have no such effect as between the contractor and his transferee. In other words, as to them, the transfer is like any other transfer of property, and controlled by the same rules. Its invalidity is only so far as the government is concerned, and it alone can raise any question of the violation of the statute. The government in effect, by this section, said to every contractor, You may deal with your contract as you please, and as you may deal with any other property belonging to you, but so far as we are concerned you, and you only, will be recognized either in the execution of the contract or in the payment of the consideration.''

To the same effect see *Pierce v. Walker,* 23 Iowa 424; *Goodman v. Niblack,* 102 U. S. 556; *Jones v. Moncrief-Cook Co.,* 25 Okla. 856, 108 Pac. 403.

It is asserted, however, that while the rule which we have announced may be the correct one as applied to prohibitions against assignments and subletting contained in the lease or contract as a part of the voluntary act of the parties, it should not be applied in a case like this, where the prohibition is found in a city charter or in a statute. The opinion of the Department accepted this view. We are unable to see any difference, unless it be that in the one instance the prohibition may be waived and in the other cannot be.

But the question of waiver is not in this case. 24 Cyc. 968, *supra*. The trial court seems, in the first place, to have reached the same conclusion we have and ordered judgment for Pederson, but on motion for new trial changed its view.

We hold that Pederson is entitled to recover on his cross-complaint. It seems to have been conceded that if he was entitled to any affirmative judgment it should be in the sum of $23,369.69, with interest..

The judgment in so far as it dismisses the cross-complaint of the Erickson Construction Company, is affirmed, but in so far as it dismisses the cross-complaint of Pederson, it is reversed and remanded with instructions to enter judgment in favor of Pederson and against the Construction Company, in the sum of $23,369.69 with interest from November 4, 1916.

MACKINTOSH, MAIN, FULLERTON, TOLMAN, MITCHELL, and MOUNT, JJ., concur.

PARKER, C. J. (dissenting)—I am now willing to concede that there is no difference, in legal effect, between a contract prohibition against subletting and a charter or statutory prohibition against subletting, as applicable to a situation such as we have in this case; and that, insofar as the Department opinion, written by myself, seems to recognize such a difference, in legal effect, it is erroneous. I am, however, still convinced, in view of the executory character and condition of the construction contract here in question at the time it was, as I insist, terminated, that the conclusion reached in the Department opinion is correct and should be adhered to. I therefore dissent.

HOLCOMB, J., concurs with PARKER, C. J.