(No. 5509. Decided August 9, 1905.)

L. NICKELSON, *Respondent,* v. CAMERON LUMBER COMPANY, LIMITED, *Appellant.*[1]

CORPORATIONS—LIABILITY FOR MALICIOUS PROSECUTIONS—ACTS OF GENERAL MANAGER IN INSTITUTING CRIMINAL SUIT — PAYMENT OF EXPENSES—EVIDENCE OF AUTHORITY—SUFFICIENCY. A general manager of a corporation renders his company civilly· liable for a malicious prosecution, where it appears that he was the statutory agent and only officer of the corporation in Idaho, that he prosecuted the criminal charge in question, maliciously and without probable cause, and to gain possession of government lands for the corporation, from which it then cut and removed the timber, that the corporation paid witness fees and employed a private counsel in the criminal case, and that the officers of the company declined to prevent the prosecution because, as stated, the manager had full control of the company's business in that state.

SAME — KNOWLEDGE OF SUIT — EVIDENCE OF CONVERSATIONS WITH OFFICERS. In an action against a corporation for a malicious prosecution, testimony of a conversation with. its officers relative to the suit is admissible to show the company's knowledge of the suit, and of the agency through which it was instituted.

MALICIOUS PROSECUTION—PROBABLE CAUSE—INSTRUCTIONS—HARMLESS ERROR. In an action for malicious prosecution, error cannot be predicated upon an instruction to the jury concerning probable cause, in that it was a question of law for the court, where the instruction was correct and the question was properly decided.

[1] Reported in 81 Pac. 1059.

PUBLIC LANDS—CUTTING TIMBER—ACTION FOR DAMAGES—RIGHTS OF SETTLER. A settler on unsurveyed government land cannot recover damages for the cutting and removal of the timber, or for permanent injury to the freehold, since the title and right of action therefor is in the government.

APPEAL—DECISION—REMITTING EXCESS. Upon reversing a case for error in including an item of damages fixed by special verdict, the judgment will be allowed to stand if the erroneous item is remitted.

Appeal from a judgment of the superior court for Spokane county, Richardson, J., entered July 2, 1904, upon the verdict of a jury rendered in favor of the plaintiff, in an action for malicious prosecution. Reversed conditionally.

*Forster & Wakefield, John B. Goode, A. W. Witherspoon,* and *W. J. C. Wakefield,* for appellant.

*Post, Avery & Higgins,* for respondent.

RUDKIN, J.—In the month of March, 1902, the plaintiff in this action settled upon one hundred and sixty acres of unoccupied, unsurveyed, public land in the state of Idaho, which will constitute a part of section 16, township 51, range 1, west, Boise Meridian, when the public surveys are extended. On the 9th day of September, 1902, a criminal complaint was lodged against the plaintiff, in the probate court of Kootenai county, in the state of Idaho, charging him with forcibly and unlawfully entering and detaining said premises against the defendant, which constitutes a misdemeanor under the laws of that state. The plaintiff was arrested on said charge, tried, and acquitted. This action was brought to recover damages for malicious prosecution.

The complaint alleged that the prosecution was instituted by the defendant wantonly, maliciously, and without probable cause, and for the purpose of unlawfully obtaining possession of the premises above described; and maliciously depriving the plaintiff of such possession; that, as soon as plaintiff was arrested on said charge, the defendant cut and removed the timber from said land, and destroyed the said

land for the purpose for which it was settled upon by the plaintiff; that the plaintiff was compelled to employ counsel and pay witness fees and expenses in his defense against said charge, to his damage, in all, in the sum of $15,000, for which he prays judgment. The case was tried before a jury, and resulted in a general verdict in favor of the plaintiff, in the sum of $2,550, accompanied by a special finding that $1,500 of that amount was for injury to the real estate in controversy between the parties. A motion for a new trial was denied, and a judgment entered on the general verdict. From that judgment this appeal is prosecuted.

We will now consider briefly the different errors assigned. It is first contended that D. R. Cameron, as general manager of the appellant corporation, had no authority, by virtue of his position, to commit an unlawful or tortious act for which the corporation would be liable. The law undoubtedly is as contended by the appellant, but there is no room for its application in this case. The testimony shows that the appellant is a corporation, organized under the laws of this state, and was, at the time complained of, extensively engaged in the lumber business, in the state of Idaho, and had, or claimed, large tracts of timber land there. Cameron was the general manager of the appellant, and its statutory agent in Idaho. He was the only officer of the company residing in that state, and had full charge of its business there. The criminal charge in question was made and prosecuted to a final judgment under his direction, and by his authority. He employed, and the appellant paid, private counsel to prosecute the case. Some, at least, of the witnesses for the prosecution were paid by the appellant. The general manager, and other employees of the appellant, attended the trial as witnesses for the prosecution. After the arrest, and before the trial of the criminal charge, the president and secretary and treasurer of the appellant were interviewed by one of the attorneys for the respondent

in relation to the prosecution of the criminal charge. These officers were informed by the attorney that the prosecution was unwarranted; that the premises were not unlawfully or forcibly entered or detained by the respondent; and that the appellant had no interest in or claim to them. The attorney further asked that a survey be made to determine the questions at issue, and that the general manager of the appellant be instructed to desist from further prosecuting the respondent. These officers communicated with the general manager over the telephone, and afterwards informed the attorneys for the respondent that they could do nothing; that Cameron had full charge in Idaho, and that matters would have to take their course. After the arrest of the respondent, the appellant, through its officers and employees, cut and removed the timber from the land in controversy, and converted it to its own use. Under these facts, it cannot be claimed for a moment that the appellant is not civilly responsible for the direct and approximate results of the prosecution.

Objection is also made to the testimony of one of the respondent's attorneys, relating to conversations between himself and the president and secretary and treasurer of the appellant, in regard to the prosecution. This conversation was competent and material for the purpose of showing that the corporation had knowledge of the prosecution while the same was pending, and of the agency through which the prosecution was brought about. The letter from respondent's attorneys to appellant, objected to, had a direct bearing upon the settlement pleaded in the answer, and testified to by the secretary and treasurer of the appellant, and was competent in that connection.

The appellant assigns as error the refusal of the court to grant a nonsuit, and the refusal to grant a new trial, on the ground of the insufficiency of the evidence. On this point we deem it sufficient to say that there was ample testimony to show that the prosecution was wholly unwarranted,

and that it was waged from improper motives. The con-
clusion that it was malicious and without probable cause
is almost irresistible.

Exception is also taken to an instruction on the question
of probable cause. It is contended that probable cause is
a question of law for the court, and should not be sub-
mitted to the jury. Whether this be true or not, the in-
struction was clearly right, and could not be prejudicial.
Whether the question of probable cause is for the court or
the jury, it was rightly decided in this case, and the ap-
pellant has no ground of complaint.

Other assignments of error relate to various rulings of
the court in connection with the respondent's right to re-
cover damages for cutting and removing the timber from
the land in controversy. The appellant contends that, inas-
much as the land will be a part of section 16 when sur-
veyed, it is the property of the state of Idaho, under its
enabling act, and the respondent cannot recover damages
for cutting timber thereon. The respondent, on the other
hand, contends that, inasmuch as he settled upon the land
before survey, he will have a preference right to enter the
same as a homestead when surveyed, and the state of Idaho
will be compelled to select other lands in lieu thereof. In
the view we take of the law, it matters little which of these
contentions is correct. Whether the land belongs to the state
of Idaho, or is public, unsurveyed land of the United States,
with no right in the respondent except that of a settler or
squatter, there is no principle of law under which the re-
spondent is entitled to recover damages for cutting or re-
moving timber therefrom. The possession of the land was
lawful, but his interest in the land at the time complained
of was limited to the right of occupancy. In so far as the
wrong complained of injured his possession or improvements,
it was a trespass against him, and he has a right of action
therefor. In so far as the wrong was a permanent injury
to the freehold, it was a trespass against the United States,

and the right of action for such rests in the United States. Under the facts appearing in the record, the respondent himself could not lawfully cut the timber in the manner alleged, if at all. He had no title to the timber when cut, and could not recover it in an action of replevin, nor recover damages for its conversion. On the other hand, the parties who cut the timber were liable to prosecution at the suit of the United States, and the United States could recover the timber in an action of replevin, after its severance from the freehold, or damages for its conversion. *Shiver v. United States,* 159 U. S. 491, 16 Sup. Ct. 54; *Stone v. United States,* 167 U. S. 178, 17 Sup. Ct. 778. In *Shiver v. United States,* the court said that the privileges of a homesteader with respect to standing timber are analogous to those of a tenant for life or for years. In *McKeen v. Gammon,* 33 Me. 187, an action was brought by a life tenant to recover damages for the cutting of timber. The court, in speaking of the right of action and the measure of damages, said:

"The plaintiff can recover no more damages than he has sustained, nor for the taking and carrying away the property of the defendant's wife. As in the case of a lease, if the lessor fells the trees, the lessee may maintain an action of trespass against him and will be entitled to recover damages adequate to the loss of his particular interest, and also for the entry into his land. But the interest of the body of the trees remains in the lessor, as parcel of his inheritance, who may punish the lessee in an action of waste, if he fells or damages any of them."

Again:

"If, then, the plaintiff should recover damages for the timber and wood, he would obtain what belongs to the wife of the defendant. But he can recover only the special damages, which he has sustained, for the breaking and entering his close, and for whatever has been carried away, which was necessary for the enjoyment of his life estate. If wood enough for fire wood, fencing, and building materials, was left in a situation as convenient and easy of access as it

was before the trespass, the injury would appear to be confined to the breaking and entering upon the plaintiff's close."

The rights of the respondent in the land in question are shadowy, to say the least. As between him and the general government, he has no rights whatever. The United States may at any time withdraw the land from settlement, place it in a government reserve, or grant it to another. *Frisbie v. Whitney,* 9 Wall. 187. Indeed, so far as this respondent is concerned, it is doubtful if he has not pleaded himself out of court as to this item of damage. He alleges in his complaint that the appellant cut and removed the timber from the land, "and destroyed said land for the purpose for which it was settled by this plaintiff." The only inference from this is that the respondent settled upon the land for the purpose of acquiring the timber, and the testimony as to the character of the land gives color to this inference. It is questionable, therefore, whether the respondent's intentions were not unlawful, or whether he had any rights whatever in the land. But in any event, he could only recover for injury to his possession and improvements, and not for the cutting or removal of timber.

The judgment must therefore be reversed, and if the respondent, within thirty days from the filing of the remittitur in the court below, files a release of the $1,500 item allowed by the jury for injuries to the land, the court will enter judgment for the respondent for the sum of $1,050, with interest from date of the verdict, together with the costs in that court. If no such release is filed, the court will grant a new trial. The appellant will recover its costs in this court.

MOUNT, C. J., FULLERTON, ROOT, and CROW, JJ., concur.