[No. 113-40947-2.    Division Two.    July 21, 1970.]

HAROLD L. BOX et al., *Respondents*, v. ROBERT L. CROWTHER *et al., Appellants.*

*Arthur & Hanley* and *Terence Hanley,* for appellants.

*Glenn W. Toomey,* for respondents.

PEARSON, J.—Action was instituted by plaintiffs against defendants for the purpose of recovering damages and for an accounting. The parties had formed two business associations in the fall of 1967. Their relationship commenced

disintegrating by late January, 1968, and this action was commenced in April, 1968.

The damage action was denominated "breach of contract" but in substance claimed a breach of fiduciary duty of one "partner" (Crowther) toward the other (Box) and a breach of fiduciary duty of a corporate president and director (Crowther) toward the corporation, Air Cargo Expediters, Inc., of which Box and Crowther were the sole stockholders.

The cause was tried to the court, sitting with a jury, and resulted in a verdict favorable to the plaintiffs in the total sum of $10,500, with interest at 6 per cent per annum. Plaintiffs were awarded $4,500 for loss of net profits to the partnership and $6,000 for loss of net profits to the corporation. The court quite properly declined to permit the jury to decide the accounting aspects of the case and submitted to the jury only the questions of damages to the plaintiffs, Box, as individuals and Air Cargo Expediters, Inc. for the alleged breach of fiduciary duty.

The final judgment provided for the appointment of a referee to effect an accounting with regard to the sums still on deposit in the joint names of the parties in the Bremerton branch of the National Bank of Commerce.

Defendants are appealing from the damage judgment rendered against them. Because of the unusual business relationship which developed between the parties, we will detail the facts before stating the issues raised on appeal.

Prior to September 15, 1967, both Box and Crowther were engaged separately in the air freight business. Box's operation, Kitsap Delivery, Inc. (KDI) was strictly a trucking operation, carrying air freight between Sea-Tac Airport and the Kitsap Peninsula. Crowther, on the other hand, was engaged in an air operation, Bremerton Air Taxi, Inc. (BAT)[1] involving carriage of passengers and some freight between the same points. Both were seeking to expand their freight business and in particular were separately interested in securing a large air freight con-

---

[1]BAT is also named as a defendant in this action.

tract with an organization entitled Air Cargo, Inc. (ACI). This was a corporation created by several major airlines to arrange local pickup and delivery services of freight from various airports to points of destination.

Realizing the need for both trucking and air delivery services in order to obtain the potentially lucrative ACI contract, the parties decided to join forces. On September 15, 1967, an oral partnership under the name and style of Air Cargo Expediters (ACE) was established and commenced operating with the ACI contract[2] as its principal asset. This contract required the carriage of air freight at fixed rates between the Kitsap Peninsula and ACI's Sea-Tac Airport facilities.

All seemed to be going well with performances of the ACI contract and Box and Crowther decided to incorporate. Both parties agreed that they would put all their non-ACI contract freight business into the "pot" (the corporate income), along with the income from such contract.[3]

When the corporation, Air Cargo Expediters, Inc., was formed on November 4, 1967, it is clear that both parties intended the corporation to succeed the partnership. There were three directors of the corporation, namely the defendant, Robert L. Crowther, and the plaintiffs, Harold L. and Jane L. Box, husband and wife. Crowther was elected president.

The testimony is somewhat confusing as to the extent of the corporate participation in the venture. The ACI contract was not formally transferred to the corporation, and there was a provision in that contract which would have prohibited such assignment without the consent of ACI. It seems clear, however, that the corporation did function for a short period of time, and the parties did contribute income from their operations into the corporate "pot" along with revenues from the ACI contract.

[2]Plaintiff's exhibit 2, effective September 15, 1967 to September 15, 1968.

[3]The ACI contract is to be distinguished from the services performed by both Box and Crowther for independent air freight forwarders, of which there were several.

Difficulties soon began to overwhelm the corporation, and for all intents and purposes, the men ceased to do business together after February, 1968. Crowther considered the corporation had terminated after he was voted out of the presidency by the Boxes on January 29, 1968.

The parties themselves were confused over their technical business relationship. Box at one point in testimony refers to Crowther as "one of the partners of the corporation." ACI never regarded the corporation as existing insofar as its contract was concerned. ACI considered that it was doing business with a partnership and received no request from the "partners" to transfer the contract to the corporation.

There was undisputed evidence that in April, 1968 Crowther negotiated a separate contract for air freight handling with ACI at reduced rates and in direct competition with the partnership or the corporation. He did this on behalf of his own corporation, the defendant, Bremerton Air Taxi, Inc. In April, 1968 and thereafter the latter corporation also commenced serving some independent air freight forwarders who had given a substantial volume of business to plaintiff's corporation, Kitsap Delivery, Inc., prior to September 15, 1967.

At the conclusion of the evidence, the jury was given the following instructions, among others:

(UNNUMBERED)

The evidence in this case is confusing. I am not sure I can explain the issues but I shall try. There are three separate claims.

(1) Box and Crowther first became partners on September 15, 1967, when they contracted with Air Cargo, Inc., for the carriage of freight between Sea/Tac and the Olympic Peninsula. Later they incorporated as Air Cargo Expediters or ACE. Box claims that he contributed $4,000.00 for operating expenses of the partnership and later the corporation. This is an accounting problem and not a question for the jury to decide. You may be relieved when I tell you that you need not concern yourself with this claim.

(2) Box and Crowther incorporated in November of 1967. Each party was to contribute $500.00 to the capital of the corporation. Box has contributed his share; Crowther admits he has not. There is no issue of fact for you to decide and you need concern yourselves no further with this claim.

(3) Plaintiffs Box and ACE claim that Crowther unfairly and in bad faith competed with Box and ACE in violation of his duties as a partner and corporate officer and that he should account to them for his net profit from such activity. Crowther denies any improper conduct. The issue for you to decide is whether Crowther did compete unfairly and; if so, what his net profits were.

. . .

### INSTRUCTION No. 5

You are instructed that the plaintiffs Box and the defendants Crowther were in fact engaged in a partnership, and stood in a fiduciary relationship to each other from September 15, 1967 to September 15, 1968.

A fiduciary relationship is defined as a relation subsisting between two persons in regard to a business of such a character that each must repose trust and confidence in the other and must exercise a corresponding degree of fairness and good faith. It exists where there is special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence.

### INSTRUCTION No. 6

Where one member of a partnership secures a valuable contract for himself which he should have secured, and had a duty to secure, for the partnership, he will be treated as trustee for it with reference to the transaction and will be compelled to account to his co-partner for the profits acquired by reason thereof.[4]

### INSTRUCTION No. 7

If you find a preponderance of the evidence that defendants in bad faith entered into contracts in competition with plaintiff corporation and thereby caused the

---

[4]Instruction No. 6 is based upon RCW 25.04.210 and accurately reflects the penalty for breach of fiduciary relationship by a partner.

loss of profits to plaintiffs, your verdict will be in favor of the plaintiffs.[5]

If, on the other hand, you find that the defendants were not in bad faith in entering into any such contract in competition with plaintiff corporation or that plaintiffs lost no profits thereby, then your verdict will be for the defendants.

. . .

INSTRUCTION No. 9

You ask if there is a time when any loss of profits would stop. The answer is yes. Plaintiffs have not established that they are entitled to any profits earned by Crowther after September 16, 1968.

The jury was also given special interrogatories which read as follows:

I

Were plaintiffs Box caused any loss of *net profit* by a wrongful act or acts of defendants? Answer *Yes*

II

If so, in what amount? Answer *$4,500.*

III

Was plaintiff corporation caused any loss of *net profit* by a wrongful act or acts of defendants? Answer *Yes*

IV

If so, in what amount? Answer *$6,000.*

(Italics ours.)

Summarizing these instructions, the jury was, in effect, told that both a partnership and a corporation existed, and that either or both were entitled to recover for net profits lost as a direct result of any wrongful acts of the defendants. At the close of the plaintiff's evidence, the trial court decided that as a matter of law a partnership existed between September 15, 1967 and September 15, 1968. This ruling was based on the testimony of both Box and Crowther that they believed the partnership continued to exist after the formation of the corporation. The ruling was

---

[5]A corporate director's duty to exercise the utmost good faith in furthering the interests of the corporation is discussed in *Poweroil Mfg. Co. v. Carstensen*, 69 Wn.2d 673, 419 P.2d 793 (1966).

also based on testimony that the contract with ACI was never transferred to the corporation. At the time the court made this ruling, defendants' attorney requested a continuance to prepare additional instructions "relating to a partnership." That request was refused. The defendants' attorney later objected to the giving of instructions No. 5 and 6, *supra*, asserting that there was evidence from which the jury could have decided that the partnership was dissolved in early 1968. On oral argument, defendants abandoned their contention that the trial court erred in ruling that the partnership continued in existence for the full year. Defendants' real objection to the ruling and instructions of the trial court is that the jury was confused by the instructions allowing damages to both a partnership and a corporation.

We think that under the evidence, the trial court properly ruled that both entities existed and were potentially damaged by the wrongful conduct of the defendant. In any event, we think the defendants were obligated to point out with particularity the defects in the instructions given, whether or not they had time to prepare instructions pertaining to the partnership.[6] *Roumel v. Fude*, 62 Wn.2d 397, 383 P.2d 283 (1963). This the defendants did not do. The possible defects in the instructions given were not challenged, and the trial court was given no opportunity to amend such instructions. *See* CR 51 (f). Moreover, the defendant did not show what additional instructions would have been submitted relating to the partnership. Since the existence of a partnership is admitted and the instructions which assumed the existence of a corporation were not challenged, the instructions given became the law of the case. *Sebers v. Curry*, 73 Wn.2d 358, 438 P.2d 616 (1968).

Depending on the circumstances of the case and the intention of the parties, when members of a partnership organize a corporation to succeed it and to carry on the

[6]It is our view that the complaint itself raised the partnership issue and the trial court did not abuse its discretion in refusing a continuance. *See* CR 51(a).

business of the partnership, the partnership may cease to exist. *See: Weisman v. Awnair Corp. of America,* 3 N.Y.2d 444, 165 N.Y.S.2d 745, 144 N.E.2d 415 (1957); *Arditi v. Dubitzky,* 354 F.2d 483 (2d Cir. 1965); *Jolin v. Oster,* 44 Wis. 2d 623, 172 N.W.2d 12 (1969); W. Fletcher, Cyclopedia Corporations §§ 4002, 4003, 4018 (perm. ed. rev. 1966). However, incorporation without further action to transfer some or all the partnership assets and business to the corporation will not terminate the existence of the preceding partnership. *Haimes v. Noble,* 202 A.2d 917 (D.C. 1964). The two organizations remain distinct entities and the rights and liabilities of the one are not the same as those of the other. W. Fletcher, *supra* § 4003. There is no evidence in this case of a transfer of partnership assets other than certain income to the corporation. We think that the trial court correctly ruled as a matter of law that the partnership continued to exist during the year for which the original ACI contract was applicable.

█ █ The evidence discloses that the necessary legal requirements for incorporation were performed, and a corporation was created on November 4, 1967. The existence of a corporation must be denied before its existence need be proven. W. Fletcher § 4110. The defendants have never denied that a corporation was created. A corporation is presumed to continue in existence until the contrary is proven. W. Fletcher §§ 4091, 4124. In this case, the defendants have admitted that a partnership was in existence, and although they have asserted in their brief that the question of whether a corporation was in existence should have been submitted to the jury, defendants did not raise that issue to the trial court and took no exception to instruction No. 7 nor to special interrogatories Nos. 3 and 4. Defendants may not properly make their challenges now. *See Agranoff v. Morton,* 54 Wn.2d 341, 340 P.2d 811 (1959).

The defendants did take exception and they argue on appeal error in the court's failure to give their requested instruction No. 1, which is based on the existence of a corporation. It reads:

Corporate Directors, while acting with good faith to their associates in the corporation, are not debarred from engaging in the same business where the corporation has failed to secure a contract previously held by it.

Defendants argue that this instruction should have been given because they cannot be held liable for net profits after Bremerton Air Taxi, Inc. secured the ACI contract because the corporation failed to secure such contract. However, the evidence affirmatively shows that the ACI contract remained the property of the partnership and was never transferred to the corporation. In view of the existence of the partnership with reference to the ACI contract, the proposed instruction would have been misleading.

At the conclusion of the plaintiff's evidence, defendants moved for a directed verdict. The grounds for the motion were that there was insufficient evidence of lost net profits or of anticipated net profits for the submission of that issue to the jury. The motion was denied. The defendants contend that there was insufficient evidence of damages to support the verdict of the jury. There is nothing in the record which shows that defendants made any objections to the interrogatories or instructions on damages, nor did defendants propose clarifying instructions on damages.

■ A litigant may recover damages for lost profits only to the extent that the evidence permits their estimation with reasonable certainty and without resort to speculation or conjecture. *Viking Equip. Co. v. Minneapolis-Moline Co.,* 61 Wn.2d 755, 380 P.2d 469 (1963). However, the exact amount of damage may be impossible to determine in some circumstances, and a defendant should not be allowed to profit from the difficulty of proving exact damages. Restatement of Contracts § 331 (1932) comment a.

In this case, exact damages were difficult to prove, due to the novelty of the ventures and the early disagreements which disrupted their operations. There was, however, substantial evidence upon which a jury could make an estimation of damages. The first problem the jury faced was to segregate damages between the partnership and the corpo-

ration, since the instructions and interrogatories indicated that either or both might recover. An apportionment could be made based on the evidence before the jury. The partnership had the rights to the ACI contract until September 15, 1968, the last day for which the jury might award damages. (Instruction 9, *supra*.) There was testimony that the defendants entered into a contract with ACI in April of 1968 for the carrying of freight between Sea-Tac and Kitsap County. The jury could have awarded damages to the partnership by determining the amount of net profits earned by Crowther on the ACI contract up to September 15, 1968. These damages directly resulted from his obtaining that account from the partnership in breach of his fiduciary duty. (Instruction 6, *supra*.)

The award of damages to the corporation could have been made based on the amount of profits which the corporation might reasonably have earned from various independent air freight forwarders. The parties had agreed that they would put all their income into the corporate "pot" from operations other than the ACI freight contract, that is, from the independent freight forwarders and other sources of revenue. There was testimony that the defendants refused to put into the corporate "pot" income derived from freight operations aside from the ACI contract. The jury could have based its award of damages to the corporation on the full amount of reasonable profits from the non-ACI freight operations.

In ascertaining the amount of damages, the jury was given detailed testimony and exhibits showing the income and profits to Box or Crowther from ACI and non-ACI freight work. There were exhibits which gave a monthly breakdown of income from ACI and the independent forwarders. These exhibits showed a substantial decrease in partnership and corporate income in mid-1968 and late 1968. Such decreases established the amount of profits defendants preempted from the partnership and corporation by their independent operations. There was also evidence of income to Crowther from freight hauling for the navy. On the other

side of the ledger, there was testimony of several items of cost to plaintiffs and defendants. Among these were truck, airplane, employee, and other operational costs. The jury was capable of subtracting the reasonable costs from the reasonable income and determining, as it did, a reasonable award of net profit lost as a direct result of defendant's activities.

However, with reference to the partnership, the jury was not specifically instructed to allow plaintiffs, Box, damages only for their 50 per cent interest in the partnership, nor was a full partnership accounting submitted to the jury. The damages awarded for breach of Crowther's fiduciary duty to his partner must, therefore, be presumed to establish the loss of profits *to the partnership* as distinguished from the net loss to Box for his partnership interest. Our consideration of the exhibits offered in support of the damage award convince us that the jury, in fact, estimated the loss to the partnership and not to the individual partners, Box.

Since the judgment entered is crucial to the partnership accounting and corporate dissolution which must now take place, the judgment should be clarified by providing that the $4,500 verdict inures to the partnership and should be used to satisfy the obligations of that entity before distribution to the partners in accordance with their respective interests in the partnership.[7] *See* RCW 25.04.380, which provides that a partner who has wrongfully caused a dissolution of the partnership continues to have his rights of a partner on dissolution after responding in damages for breach of the partnership agreement.

We think, also, that the accounting provision of the final judgment is too narrow and such order should have provided for a full accounting of the partnership assets and obligations and distribution of any remaining assets or lia-

---

[7]With reference to the $6,000 awarded to the corporation, the judgment clearly inures to the benefit of the corporation and not to Box as a shareholder.

bilities to the partners in accordance with their interests in the partnership. RCW 25.04.380.

Judgment is affirmed as modified and remanded for completion of the partnership and corporate dissolutions, in a manner consistent with this opinion.

ARMSTRONG, C. J., and PETRIE, J., concur.