[No. 687-1.  Division One—Panel 1.  December 20, 1971.]

DRAVO CORPORATION, *Appellant*, v. L. W. MOSES COMPANY *et al., Respondents and Cross-appellants.*

*DeGarmo, Leedy, Oles & Morrison, Gerald DeGarmo,* and *Seth W. Morrison,* for appellant.

*Thomas D. Frey,* for respondent and cross-appellant L. W. Moses Company.

*Franklin & Watkins* and *Ralph E. Franklin,* for respondent and cross-appellant St. Paul Fire and Marine Insurance Company.

UTTER, J.—Dravo Corporation brought suit against L. W. Moses Company, a subcontractor, and St. Paul Fire and Marine Insurance Company who furnished a performance bond to Dravo on behalf of Moses. Dravo claimed Moses did not complete certain work contracted for and sought recovery for the cost of completion against Moses and St. Paul. Moses cross claimed seeking recovery for the work it did do from Dravo.

In a trial to a jury, a verdict was rendered in favor of

Moses and St. Paul on the Dravo claim. Judgment was entered upon this verdict dismissing the Dravo claim with prejudice. With respect to the Moses counterclaim against Dravo, a verdict was rendered in favor of Moses. A motion for new trial made by Dravo was granted but limited to the amount of damages recoverable by Moses and the judgment by Moses against Dravo affirmed on the issue of liability.

Dravo's assignments of error fall into three categories. It is first contended that Dravo is entitled to a directed verdict on the issue of liability of Moses Company and St. Paul because Moses was not terminated by Dravo and was therefore unjustified in abandoning his subcontract. It is secondly urged that the court erred in refusing to give Dravo's instruction relating to a January 1 completion date and giving an instruction interpreting the contract after finding it ambiguous, in reversing its decision granting a new trial on all issues by virtue of an error in an instruction given, and in allowing testimony concerning precontract negotiations to modify the express contract terms.

The third category of assignments is directed to the court's either giving or failing to give instructions on the issues of interpretation of ambiguity, measure of damages, extension of time for completion, control of subcontractor by the prime contractor, materiality of alleged contract breaches, and, finally, to the court's action in sustaining an objection to the admission of certain evidence.

Moses, in his cross-appeal, assigns error to that action of the trial court which denied Moses their judgment for costs and disbursements and to its action in granting a new trial and setting aside the jury verdict as to damages awarded Moses in their cross claim against Dravo.

On June 6, 1966, Dravo entered into a construction contract with Metro for construction of a sewage disposal project which included construction of a trunk sewer, a portion of which ran through a navy supply depot crossing under the navy's fuel farm and considerable railroad trackage. Much of the line was constructed by digging a trench, laying pipe and filling over the pipe. There were segments,

however, that could not be constructed by an open cut due to fuel installations or railroad tracks crossing the line of the sewer and underground methods had to be used. Moses was employed to do portions of the underground work by a process called "jacking." By this process, 8-foot long casings, 54 inches in diameter, were forced horizontally through the earth by several powerful jacks, like pushing a cooky cutter against dough. A smaller 27-inch reinforced concrete sewer pipe was then installed inside the casing pipe. The jacking done was in open excavations at the depth required for installation of the sewer pipe.

Negotiations started between Dravo and Moses on July 22, 1966. Documents were exchanged between the parties during August and on August 18, Moses received a purchase order from Dravo confirming the subcontract. Moses in turn informed Dravo by letter that "Dependent upon our receipt of signed Contract and Notice to Proceed and Materials involved we plan to proceed at a location selected by you on September 19, 1966." A letter dated August 26, 1966, delivered Dravo's signed subcontract to Moses. On September 26, 1966, Moses commenced work at a location directed by Dravo. Moses' first preliminary work schedule submitted indicated a completion time of December 31. On November 7, a revised schedule was submitted by Moses showing an extension of the completion date to February 1, 1967.

The testimony shows substantial difficulties occurred between Moses and Dravo from September 26 to January 1. Testimony introduced by Dravo indicates Moses had completed only a small percentage of the work contracted for by January 1, and that by that date a substantial length of tunnel that he was to install was so far off grade as to be unsatisfactory. Testimony introduced by Moses, on the other hand, indicates many of the delays were occasioned by the failure of Dravo to have necessary work done prior to the time that Moses could start or complete his portion of the work and that he had been required to do much of the work Dravo was to have completed prior to the time

Moses started. On December 29, Metro notified Dravo of its dissatisfaction with the long section of pipe which was off grade and Moses acknowledged the conditions by a letter of December 29 to Dravo and outlined the difficulties he had encountered and proposed corrective measures.

On January 5, a meeting was held between Lancaster, Dravo's superintendent and others, at which meeting Lancaster advised Moses that his contract time was up and that Lancaster was giving Moses "72 hours to expedite the work and he asked me what I was going to do." Lancaster then handed Moses a letter dated January 4, 1967 which stated in part:

> The date of completion of all work to be done under this contract was January 1, 1967 . . . Pursuant to the provisions of article 12 of the subcontract agreement above mentioned, you are hereby notified that you are in default for failure to complete the work within the time set forth in the subcontract . . . Should you fail to comply with this notification, we will exercise the rights and remedies as provided by article 12 of the subcontract . . . We hereby make demand on you to forthwith and in no event later than 72 hours from the time of delivery of this notification, place upon the project additional equipment and personnel required to expedite and perform the work under your subcontract and continuously thereafter prosecute such work as required by the terms of your agreement with us.

Moses thereafter worked a few days, installing additional piping. A meeting was held on January 12 between Lancaster and others from Dravo and Moses and two representatives from St. Paul Fire and Marine Insurance Company. Moses' testimony of what occurred at that meeting was that Lancaster told him "I hadn't done anything, I had not expedited the work, I had not lived up to the subcontract and that I was through." He further stated Lancaster said a letter would be mailed to him immediately to the effect that "we were through and he was terminating our subcontract." Moses testified that although he was told his contract was terminated on January 12, he did not leave the project on that date because Lancaster told him he would

follow up with a letter. Lancaster's version differs from that of Moses and indicates merely that prior to the meeting he learned the work being done by Moses in the preceding days was off grade and requested the bonding company to assist Moses in the work. He specifically denied terminating the contract.

Following the meeting Lancaster on behalf of Dravo wrote a letter to St. Paul indicating that in accordance with article 12 of the subcontract, they were giving notice of default in performance of the work. They specifically claimed:

1. The subcontractor has failed to complete the work within the specified time.

2. The subcontractor has failed to prosecute the work continuously with sufficient workmen and equipment to insure completion within the specified time.

3. The majority of the work completed to date is not in accordance with the plans and specifications of the original contract between the owner and Dravo Corporation. We herewith notify you of default as surety for the principal, L. W. Moses Company, and urge that immediate and remedial steps be taken before further delay and loss incurred by Dravo Corporation.

Moses then wrote a letter on January 19 to Dravo, noting that he had been defaulted by Dravo but denying the contract was actually in default. The letter states in part:

Because of your wrongful termination of my subcontract, I have stopped work and hereby notify you that I will hold you fully responsible for all my loss and damage because of your breach of contract and for the value of my work performed to this date.

Dravo claims it is entitled to a directed verdict on the issue of liability because the testimony, as a matter of law, does not indicate Moses was ever in fact terminated by Dravo and therefore had no legal justification for abandoning the project on January 19, 1967.

In ruling upon Dravo's contention, we cannot set aside the verdict unless we can say as a matter of law there is neither evidence nor reasonable inference from the evi-

dence to support the verdict. After viewing the evidence in a light most favorable to the party against whom the motion is made, all competent evidence favorable to the party who obtained the verdict must be taken as true and that party must be given the benefit of every favorable inference which reasonably may be drawn from the evidence. If there is substantial evidence to support the verdict, it must stand. Substantial evidence is that character of evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed. *Becker v. Tacoma Transit Co.*, 50 Wn.2d 688, 690, 314 P.2d 638 (1957).

██ The question of what constitutes notice of termination must be determined from the facts and circumstances of each case. *Lano v. Osberg Constr. Co.*, 67 Wn.2d 659, 663, 409 P.2d 466 (1965). Dravo attempts to draw from the *Lano* case a rule that the verbal statement "you are through", as attributed to Lancaster as part of a general discussion and subject to later written confirmation, is insufficient as a matter of law to terminate a contract. *Lano* does not so hold. At no time in *Lano* did the prime contractor tell the subcontractor he was terminated, but merely indicated that he would be terminated if work progress did not improve. The case was decided on the issue of whether the notice of termination, when finally given, was "reasonable notice" in relation to the time to satisfactorily perform given in the notice itself.

Giving Moses the benefit of all of the reasonable inferences he is allowed from his testimony, we believe that a jury could properly determine that the verbal statement "You are through" followed by the letter to St. Paul Fire and Marine from Dravo as hereinbefore set forth was sufficient to constitute substantial evidence from which the jury could have found Moses was terminated.

Error is next assigned to the court's failure to give Dravo's requested instruction No. 3:

You are instructed that if the Moses Company was required to commence work within 30 days after being

notified by Dravo that such points as designated by Dravo were to complete the work within 120 calendar days from such notification and in any event on or before January 1, 1967. The notification where to commence work was not required to be written.

We have reviewed Dravo's exceptions to instructions and the court's refusal to give certain instructions and do not find any exception taken to the failure to give instruction 3. The instruction is mentioned in a comment relating to argument in connection with instruction 9 but this is all. No grounds for objections are stated.

■ CR 51(f) provides for objections to "state distinctly the matter to which he objects and the grounds of his objection . . ." An exception to the court's failure to give an instruction must apprise the trial judge of the points of law involved and where it does not so advise the court on any particular point of law, those points will not be considered on appeal. *State v. Lyskoski*, 47 Wn.2d 102, 287 P.2d 114 (1955); *Colonial Inv. Co. v. Kuhnhausen*, 73 Wn.2d 861, 440 P.2d 975 (1968); *State v. Scherer*, 77 Wn.2d 345, 462 P.2d 549 (1969); *State v. Scott*, 77 Wn.2d 246, 461 P.2d 338 (1969); *Myers v. Ravenna Motors, Inc.*, 2 Wn. App. 613, 468 P.2d 1012 (1970).

CR 46, obviating the necessity to take formal exceptions to a ruling or order of the court[1], does not in any way diminish the requirement of CR 51(f) that objections to instructions "state distinctly the matter to which he (counsel) objects and the grounds of his objection." *Moore v. Mayfair Tavern, Inc.*, 75 Wn.2d 401, 407, 451 P.2d 669 (1969). As the court there noted at page 407 "not only did counsel fail to apprise the court of his grounds, but he also

---

[1]"Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him."

passed up an opportunity to persuade the court to give an instruction expressly embodying his theory."

The purpose of the rule is to make clear to the court, at a time when it has all the evidence and legal arguments before it, the exact points of law and reasons upon which counsel argues the court is committing error, as relates to a particular instruction. Our reading of the record convinces us that although the general subject matter to which instruction 3 relates may have been before the court in argument on another instruction, the court did not have instruction 3 "distinctly" related to the claimed error. The court could not adequately consider the grounds of the objections as they relate to this instruction and we, therefore, will not review the claimed error.

Dravo next argues that the court committed prejudicial error by giving instruction 9 which reads:

> You are instructed that the Moses Company was required to commence work in the field within 30 days after being notified by Dravo at such points as designated by Dravo and to complete the work within 120 calendar days *from the start thereof.* The notification of when and where to commence work was not required to be in writing.

The italicized words were added to the instruction at the time the parties were taking their exceptions. This instruction had been given to the parties the preceding evening at the same time as the court's other proposed instructions in the case. The court added the italicized language "from the start thereof" inasmuch as he was concerned that an argument might be made that Moses had over 150 days to complete his work under the terms of the contract from the time he was notified to proceed. This was indicated by the following colloquy:

> THE COURT: I am going to add to Instruction No. 9, after the word "days," the words, "from the start thereof." So that it clearly indicates that he has but 120 days from the day that work was started.
> COUNSEL FOR DRAVO: Regardless of when he starts?
> THE COURT: Yes.

COUNSEL FOR DRAVO: In other words, he could start any time; the starting date means nothing.

THE COURT: No, it says that he has to start within 30 days. He was required to start within 30 days after being notified, and then assuming he starts earlier than the 30 days, he doesn't get the benefit of the balance of the 30 days.

CO-COUNSEL FOR DRAVO: Then of course it is clearly open to argument as to when the notification was, and we do not accept September 2d as that notification.

THE COURT: You are certainly entitled to argue when the notification was.

CO-COUNSEL FOR DRAVO: Thank you, your Honor.

THE COURT: And you are entitled to argue when the work actually was started. But in order to make sure that this is not misunderstood, I am going to add the words, after the word "days," "from the start thereof."

Dravo's exceptions to the court's instruction indicate their only concern was that they would be unable to argue for a January 1 completion date under the terms of the court's instructions. Their comments later in the colloquy indicate, however, that they were satisfied the court's instruction gave them latitude to argue Moses was notified to commence work prior to September 2 and that this in turn could require Moses to complete his work by January 1. It was not until after exceptions to the instructions were taken that counsel apparently realized a letter from Dravo to Lancaster established that September 26, the day work started as designated by all parties, was also acknowledged by all parties to be within 30 days from the agreed notification to start work, thereby effectively removing the argument that January 1 was the completion date of the project.

The court's comments, at the time the exceptions were taken, do not indicate it believed it was instructing, as a matter of law, that January 1 could not be argued as the completion date of the contract.

Dravo's exceptions to instruction 9 do not "distinctly" point out to the court that it was instructing, as a matter of

law, that the completion date could not have been January 1, 1967 and the error assigned to the giving of this instruction will not be considered (CR 51 (f)).

Dravo's requested instruction 12 is an instruction relating to the rule given in interpreting an ambiguous contract and setting forth certain rules of construction to guide the jury.

This instruction was first offered after the court's instructions had been read to the jury. Dravo explains its failure to submit the instruction by pointing out that the court had given counsel, the night before the jury was instructed, its proposed instructions including instruction 9 in its unmodified form, and that it believed that language would allow it to argue that a January 1 completion date was required. Dravo argues that the change in language previously discussed herein, added by the court, presented it the next day for the first time with the necessity to instruct the jury on its role in interpreting the ambiguous contract.

Respondents St. Paul and Moses point out that the trial commenced on February 2, 1970 at which time Dravo presented the proposed instructions numbered 1 through 7 which did not include any instruction on interpretation of the contract. All parties rested on February 17, 1970 and on the morning of February 18, 1970 the parties took exceptions to instructions and proposed instructions. The court instructed the jury just before the noon recess on February 18 and Dravo's instruction was first submitted at the afternoon session. The court did indicate to Dravo prior to instructing the jury that if the instruction on ambiguity was available, it would not be given. The court, at that time, refused to rule Dravo's action was timely, stating:

THE COURT: Whether the offer is timely or not, the Court is not ruling at this point. It is not up to the Court to rule at this point.

When the instruction was later offered it was also refused by the court as an incorrect statement of the law. We hold the instruction was not timely submitted and cannot agree that counsel for Dravo was lulled into nonaction by the action of the court, thereby excusing his failure to submit

his instruction on the matter of ambiguity at the start of the trial. CR 51(a) provides:

> Unless otherwise requested by the trial judge on timely notice to counsel, proposed instructions shall be submitted when the case is called for trial. Proposed instructions upon questions of law developed by the evidence, which could not reasonably be anticipated, may be submitted at any time before the court has instructed the jury.

Dravo should have reasonably recognized that the court might not accept the interpretation of the contract it urged and that the jury might then need to be instructed on the issue of ambiguity. The arguments of counsel for Moses and St. Paul in their opening statements indicated the claimed ambiguity of the contract would be an issue that needed to be resolved. The failure to submit instructions at the start of the trial deprived the court and opposing counsel of the reasonable time to permit consideration of the specific language of the instruction adherance to the rule would have allowed. This created the precise situation condemned by the court in *Ogilvie v. Hong,* 175 Wash. 209, 212, 27 P.2d 141 (1933). The court there noted:

> Not having prepared and presented any requested instructions covering these matters at a time when the court could give them consideration, but by his motion after the charge had been given, counsel, perhaps unwittingly and unintentionally, called upon the court to act offhand and without preparation or consideration in the delicate matter of defining the law applicable to certain phases of the case. To countenance that practice would be not only to encourage and invite error, but in many, if not most, instances it would make error inevitable. Judges are but men, with all of the usual human limitations, and trial judges work under a time pressure in order to expedite business. Under such conditions, probably no man living and none known to legal history, could, offhand and upon an unforeseen demand, correctly define every one of the niceties and fine distinctions of the law, and so accurately and fully instruct the jury on every legal issue in the case as to avoid error.

Our ruling regarding the sufficiency of the exceptions to Dravo's proposed instruction 3 and the court's instruction 9 make it unnecessary for us to discuss the other claimed errors directed to the topics covered by the instructions.

Dravo claims the court erred in admitting testimony concerning certain precontract discussions between Moses and Lancaster. The subject of the discussion was first raised by Dravo in its case in chief and they cannot now claim it was error. *Walker v. Herke*, 20 Wn.2d 239, 147 P.2d 255 (1944); *Sullivan v. Dunn*, 46 Wn.2d 255, 280 P.2d 668 (1955).

Dravo claims the court erred in giving its instruction 10 which read:

> You are instructed that R. W. Moses Company was entitled to additional time for completion of its contract, if you find that its performance was delayed by the acts of the Dravo Corporation.

Dravo admits that Moses might be entitled to a time extension because of delay under some circumstances, but objects because the instruction does not expressly limit the time extension to the period of delay. It is further argued that the instruction should have included the contract provision of article 13, "Extension of Time" which states:

> No extension of time for completion will be made for delays or suspension of work caused by the fault or negligence of the subcontractor, and no extension will be granted that will render the contractor liable for penalty or damages under the original contract.

While Dravo mentioned article 13 of the contract in its exceptions, it did not call to the court's attention its first objection that the instruction does not expressly limit time extension to the period of delay and we therefore cannot consider that ground (CR 51(f)). As to the second objection to the instruction; article 13 relates to delays caused by negligence of the subcontractor Moses. The instruction refers only to delays "by the acts of the Dravo Corporation" and is therefore not in error by failing to include article 13.

Dravo's assignment of error to the court's failure to give their instruction 9 concerning control of Moses' performance is not properly before us. Their exceptions with respect to this instruction merely stated "We except." (CR 51(f)).

■ Dravo's argument that the court erred in failing to give the requested instruction 11 concerning the materiality of alleged contract breaches by Dravo cannot be considered by us inasmuch as no assignment is made by them with respect to failure to give this requested instruction. In any event, the subject matter of the instruction was covered in instruction 6 where the jury was instructed Moses had the burden of proving Dravo materially and substantially breached the contract. For this reason as well, no error was committed in refusing the instruction.

■ Dravo lastly alleges the court erred in excluding exhibit 133, a steel liner plate purchase order signed by Dravo for the benefit of Moses. Without detailing the nature of the letter it is urged by Dravo that it was offered as evidence of Dravo's good faith, cooperation and financial assistance to Moses at the time of his serious difficulties. The admission of an exhibit on these grounds is within the discretion of the trial court. We find no abuse of that discretion by failure to admit this exhibit. *Chase v. Beard*, 55 Wn.2d 58, 346 P.2d 315 (1959).

Moses assigns error on its cross-appeal to that action of the trial court granting a new trial to Dravo on the issue of damages in Moses' cross complaint against Dravo on the ground that "substantial justice" had not been done when Moses was awarded "his complete costs plus an additional sum which is believed to be for interest."

The trial court entered a memorandum decision on April 3, 1970 granting Dravo a new trial on all issues. The reasons given by the court were that it erred in giving instruction 9 previously discussed herein. The court further stated that

since the defendant's theory of the case was that he was suing on quantum meruit and not on breach of contract

that Instruction No. 14 did not properly submit to the jury the question of quantum meruit, i.e. the reasonable value of the services rendered by the defendant to the plaintiff, this instruction also was in error and that in addition the evidence overwhelmingly established that much of the work performed by the defendant Moses Company was of no value to the plaintiff. The undisputed evidence being that only 75 to 80 feet of the tunnel driven by defendant Moses had been used. The evidence undisputed also established that the portion of the tunnel not used created additional problems and costs in seeking to correct the fault existing in the latter portion of the tunnel driven from Station 72.85. Under such evidence, the court must find that substantial justice had not been done when the jury awarded the defendant his complete costs plus an additional sum which is believed to be for interest.

Following the entry of this memorandum decision, the court informed counsel he had concluded instruction 9 was in fact properly given and that he would grant a new trial upon the counterclaim of the defendant L. W. Moses limited to the issue of damages which may be recovered by Moses against Dravo. In the formal order granting the new trial on the issue of damages, the reasons given by the court were "that instruction 14 of the court was erroneous and that the verdict of the jury granting recovery to L. W. Moses Company in the sum of $31,014.71 was erroneous and excessive, did not constitute substantial justice and was not supported by the evidence."

Dravo contends jury instruction 14 was in error because it failed to allow a deduction for Dravo's cost of completing the contract.[2]

Moses contends no deduction for completion of the project is allowable because instruction 14 is not a request for

---

[2]"If you find that the L. W. Moses Company was not in default in the performance of its subcontract when the Dravo Corporation took over the subcontract work, then you must determine the amount of money which reasonably and fairly compensate the L. W. Moses Company for such damages as you find were caused by the wrongful taking over of the subcontract work by the Dravo Corporation. If you find for the L. W. Moses Company, your verdict should include the following items:

damages for breach of contract which would permit such a deduction, and instead, requests a restitutionary remedy which he labels quantum meruit.

■ The various contentions concerning instruction 14 may be resolved by a careful definition of the terms quantum meruit, implied contract and restitution. The term quantum meruit may be defined to include restoration of a party to the *status quo ante* when a contract has been wrongfully terminated after part performance. 5 A. Corbin, Contracts § 1109 (1964); C. McCormick, Law of Damages § 165 (1935); *Noyes v. Pugin*, 2 Wash. 653, 27 P. 548 (1891); *Dyer Bros. Golden West Iron Works v. Pederson*, 112 Wash. 390, 192 P. 1002, 197 P. 622 (1920); *Bailey v. Furleigh*, 121 Wash. 207, 208 P. 1091 (1922); *Ahrens v. Ladley*, 53 Wn.2d 507, 334 P.2d 778 (1959). Conceptual clarity is served if two different types of recovery included in the term quantum meruit are narrowed and kept separate. These are quantum meruit as applied to restitution and as applied to implied contract.

Restitution is an alternative remedy to damages for breach of contract. The purpose of the remedy of damages for breach of contract is to place an injured party in as good a position as he would have occupied had the contract been performed. The purpose of restitution is the restoration of the injured party to as good a position as that occupied by him before the contract was made. Restatement (Second) of Contracts § 347 (1932) (hereinafter referred to as Restatement).

■ Restitution is a proper remedy for a party who after partial performance has been prevented from further performance by a total breach of an indivisible contract. Restatement § 347; 5 A. Corbin, Contracts § 1104 (1964); *Ahrens v. Ladley, supra.*

---

"1. The cost of work up to the date Dravo Corporation took over the work.

"2. Overhead and profit.

"From the above computation you should substract any payments made by Dravo to or on behalf of the L. W. Moses Company."

Quantum meruit has been defined to include recovery allowed where one party's performance occurs in the absence of a contract. *Losli v. Foster,* 37 Wn.2d 220, 222 P.2d 824 (1950) or where substantial change not within contemplation of the parties occurs with a resulting benefit to one party and expense to the other. In such instances, the Washington Supreme Court has allowed the burdened party to recover the value of his performance in quantum meruit and has allowed profit to be included in the computation of the ratio of performance. *Bignold v. King County,* 65 Wn.2d 817, 399 P.2d 611 (1965).

Restitution differs from the above in that there is no contract implied and no full performance on the contract. The court, instead, upon total breach of one party allows the other party to be restored to his position prior to his pretrial performance.

In Washington the proper damages for a recovery in restitution upon a wrongfully terminated contract is the reasonable value of services. Past cases have held that the contract itself furnishes the measure of damages to the extent of the evidence thereby afforded. *Noyes v. Pugin,* 2 Wash. 653, 27 P. 548 (1891); *Dyer Bros. Golden West Iron Works v. Pederson,* 112 Wash. 390, 192 P. 1002, 197 P. 622 (1920); *Bailey v. Furleigh,* 121 Wash. 207, 208 P. 1091 (1922); *Ahrens v. Ladley,* 53 Wn.2d 507, 334 P.2d 778 (1959).

Contrary to these older Washington cases, the decided balance of judicial opinion does not limit recovery under restitution to the contract price, C. McCormick, Law of Damages § 166 (1935), since the value of services performed to the point of termination may not be related to the comparable portion of the contract price.

We need not decide whether this is still the law in our state inasmuch as in the instant case, the jury heard substantial evidence showing Moses' cost of performance was in part increased by the activity of Dravo in a manner not predictable or contemplated at the time of making the contract.

When the value of service includes costs not contemplated by the contract or when these costs are not predictable at the time of making the contract, then the contract does not limit recovery but furnishes evidence of recovery to the extent of the evidence thereby afforded. *Bailey v. Furleigh, supra; Bookhout v. Vuich,* 101 Wash. 511, 172 P. 740 (1918).

In the present case, the correct measure of recovery is the reasonable value of performance measured as of the time it was received as part performance of the contract less the amount of benefits received as part performance on the contract by Moses. Restatement § 341 (1).

Moses' actual expenditures are relevant on the issue of the reasonable value of his performance. No deduction for the cost of completion of the contract is allowed Dravo inasmuch as the theory of recovery by Moses is not premised upon the contract, but the restoration of Moses to as good a position as that occupied by him before the contract was made. On the other hand, profit should not be a properly recoverable item for Moses, as this would do more than place him in as good a position as that occupied by him before the contract was made. No exception was taken to instruction 14 on this ground, however, and it became the law of the case. *Lunz v. Neuman,* 48 Wn.2d 26, 290 P.2d 697 (1955). It was in general a correct statement of restitutionary recovery except for allowance of profit and interest.

No interest should be allowed Moses on his recovery as there is no computable standard for recovery fixed by the parties and reasonable value is not a fixed standard. *Mall Tool Co. v. Far West Equip. Co.,* 45 Wn.2d 158, 273 P.2d 652 (1954); *Hopkins v. Ulvestad,* 46 Wn.2d 514, 282 P.2d 806 (1955); *Boespflug v. Wilson,* 58 Wn.2d 333, 362 P.2d 747 (1961).

At trial, appellant Dravo excepted to instruction 14 on the grounds that it failed to allow a deduction for Dravo's cost of completion of the project after Moses was terminated. No other reason for the exception was given. Dravo

was from the beginning of the trial aware of Moses' intent to pursue a restitutionary remedy labeled quantum meruit. Moses announced this intent in his trial brief at the outset and at no time indicated a desire to sue on the contract. Given this, Dravo was obligated to point out with particularity the defects of the instruction as it related to Moses' theory of the case. CR 51(f). Defects in the instruction which were related to a restitutionary theory of recovery were not challenged and the trial court was not given the opportunity to amend its instructions required by CR 51(f). *Box v. Crowther,* 3 Wn. App. 67, 473 P.2d 417 (1970).

CR 59(a) provides grounds upon which a new trial may be granted. Included as grounds are

(5) Damages so excessive or inadequate as unmistakably to indicate that the verdict must have been the result of passion or prejudice;

. . .

(7) That there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law;

(8) Error in law occurring at the trial and objected to at the time by the party making the application;

(9) That substantial justice has not been done.

The trial court's conclusion that substantial justice has not been done is unsupported, except for the statements in the order. CR 59(f) requires

In all cases where the trial court grants a motion for a new trial, it shall, in the order granting the motion, state whether the order is based upon the record or upon facts and circumstances outside the record which cannot be made a part thereof. If the order is based upon the record, the court shall give definite reasons of law and facts for its order. If the order is based upon matters outside the record, the court shall state the facts and circumstances upon which it relied.

The court upon appeal will not sustain the granting of a motion for new trial if these reasons are not listed. *Johnson v. Department of Labor & Indus.,* 46 Wn.2d 463, 466, 281 P.2d 994 (1955); *State v. Collins,* 72 Wn.2d 741, 745, 435 P.2d 538 (1967). If we give the order of the trial court granting the

new trial its broadest interpretation and hold that the language stated reasons for granting a new trial rather than simply conclusions, the reasons stated are still all matters which must be of record inasmuch as the trial court did not indicate that the order is based upon matters outside the record. The record does not support the reasons given by the trial court.

Instruction 14 was not properly excepted to by Dravo and therefore may not be a basis for a ground for new trial. The contention that the verdict was erroneous and excessive and not supported by the evidence relates to the trial court's determination, in part, that any recovery by Moses would have to consider the reasonable value of services rendered by him to Dravo. The law, as herein discussed, does not support this conclusion and there is substantial evidence, when it is construed in a light most favorable to Moses, to support a verdict for services rendered Dravo by Moses based upon work done both within and outside the contract. Manhole 99, completed by Moses for Dravo, was outside the scope of the contract negotiations and delayed Moses' performance substantially. There was evidence from which the jury could have also found that Dravo did not have, pursuant to his agreement, a jacking pit ready at station 56 plus 60 and the subsequent expenditures and loss of time by Moses were directly related to Dravo's failure to perform. This was evidence from which the jury could and apparently did find that although some of the work done by Moses was of no direct benefit to Dravo, his expenditures were a direct and proximate result of Dravo's wrongful conduct.

The final ground assigned by the court as a reason for granting a new trial and determining that substantial justice as well, had not been done, was that the jury awarded Moses "his complete costs plus an additional sum which is believed to be for interest." In the course of the trial an exhibit containing the exact amount of Moses' costs, plus overhead, profit and interest was set forth in exhibit 141.[2] This exhibit went to the jury and was the exact amount awarded to Moses in the jury verdict.

The parties agreed the matter of interest would be determined by the court and not by the jury. However, the sum awarded by the jury in excess of Moses' proof unmistakably included an award for the interest. Where an improper element of damages is submitted to the jury, the vice may be cured by ordering a remission if the amount of such damages can be readily calculable with reasonable certainty. *Nickelson v. Cameron Lumber Co.*, 39 Wash. 569, 81 P. 1059 (1905); *Hoyt v. Independent Asphalt Paving Co.*, 52 Wash. 672, 101 P. 367 (1909); *Peterson v. Chess*, 92 Wash. 682, 159 P. 894 (1916). Under the particular facts of this case we believe the element of interest, improperly awarded by the jury, is readily calculable with reasonable certainty and see nothing to be gained by submitting the case for a new trial on the issue of damages where this error can be corrected at the appellate level. In light of our holding in this case that a new trial was improperly granted to Dravo on the issue of damages on Moses' cross complaint, Moses is entitled to their costs on appeal, RCW 4.84.030, as the prevailing party.

The judgment of the trial court is affirmed except insofar as a new trial is granted on the counterclaim of defendant L. W. Moses Company against Dravo. The order granting a new trial is reversed and the judgment of $31,014.71 is hereby ordered reduced by $4,181.91, the figure denominated for interest in the claim submitted to Dravo.

HOROWITZ, C.J., and WILLIAMS, J., concur.

Petition for rehearing denied February 25, 1972.

Review denied by Supreme Court June 30, 1972.

| | | |
|---|---|---|
| [2]"TOTAL EXPENDITURES: ............................ | | $53,427.82 |
| "Less payments by Dravo ........................ | | 30,195.90 |
| | | $23,231.92 |
| " 5% Overhead ........................ | $1,161.57 | |
| "10% Profit ........................... | 2,439.35 | |
| " 6% Interest ......................... | 4,181.91 | |
| "Total Claim by Moses ......................... | | $31,014.71" |